**Susan Lewis BROOKS, Plaintiff– Appellant,**

v.

**TRAVELERS INSURANCE COMPANY, Defendant– Appellee.**

**Docket No. 99–9506.**

United States Court of Appeals, Second Circuit.

Argued: March 11, 2002.

Decided: July 25, 2002.

Gary Phelan, Klebanoff & Phelan, West Hartford, CT, for Plaintiff–Appellant.

Victoria Woodin Chavey, Day, Berry & Howard LLP (Meredith G. Diette on the brief), Hartford, CT, for Defendant–Appellee.

Before: CARDAMONE, LEVAL, and SOTOMAYOR, Circuit Judges.

LEVAL, Circuit Judge.

Plaintiff Susan Lewis Brooks brought this action in the United States District Court for the District of Connecticut (Eginton, *J.*) against her former employer, Travelers Insurance Company ("Travelers"), alleging that she was illegally terminated under the Americans with Disabili-

ties Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Employee Retirement Income Security Act ("ERISA"). On motion of Travelers, the court dismissed the action, compelling plaintiff to proceed by arbitration. Plaintiff appealed. Following oral argument, at which this court expressed concern as to whether Travelers' arbitration policy provided adequately for the enforcement of federal statutory rights, Travelers moved to dismiss this appeal, asserting that it would no longer seek to compel plaintiff to arbitrate her claims. Plaintiff responded that in dismissing the appeal we should *vacate the judgment of the district court,* which dismissed her action. Travelers does not oppose that demand. We accordingly vacate the judgment of the district court, remand for reinstatement of plaintiff's action, and dismiss the appeal.

## BACKGROUND

*A. Facts*

Brooks began working for Aetna in 1977. By 1995, she served as the Director of Client Services in Aetna's Property and Casualty Group ("Aetna P & C"). In April 1996, Aetna P & C was acquired by Travelers, and employees in Aetna P & C became employees of Travelers.

The complaint alleges the following facts: Brooks was diagnosed in 1987 with rheumatoid arthritis, for which she underwent bilateral hip replacement surgery in 1993. The disease left visible deformities in her hands and feet. In 1997, she suffered a severe fracture in her arm, forcing her to miss six weeks of work. Later that year she began to suffer severe back spasms and also developed bursitis in her knee. Throughout 1997, various Travelers employees inquired about her rheumatoid arthritis, and Brooks's supervisor expressed concern about the effect of the illness on her "ability to lead." During

this period, her supervisor removed her from certain projects and responsibilities. In November 1997, Travelers terminated Brooks's employment, citing the reorganization of her division as the reason. Brooks was 43 years old at the time of her termination, and her replacement was 37 years old. After her termination, Travelers denied Brooks disability benefits. Brooks contends that in terminating her employment, Travelers was motivated by bias against age and disability.

During Brooks's employment at Travelers, Travelers distributed an Employee Handbook ("Handbook") to all former Aetna employees. The Handbook provides a detailed internal dispute resolution procedure for "any employment-related concern." In the event this internal procedure fails to resolve an employment dispute, employees are entitled to request arbitration in accordance with Travelers' arbitration policy. The policy makes "arbitration the required, and exclusive, forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and the Travelers Group." Travelers alleges that Brooks agreed in writing to be bound by this exclusive arbitration policy.

*B. Proceedings Below*

Citing Brooks's contractual agreement to arbitration as the exclusive forum for the resolution of employment disputes, Travelers moved to compel arbitration and to dismiss the complaint, or in the alternative, to stay proceedings pending arbitration. Brooks opposed the motion on three main grounds. She argued that (1) Travelers' arbitration policy was unenforceable because it did not provide for effective vindication of her statutory rights; (2) the policy was unenforceable under Connecti-

cut contract law; and (3) she had not knowingly and voluntarily waived her right to a judicial forum.

The district court rejected Brooks's arguments. It found that her signature accepting Travelers' arbitration policy effectively waived her right to a judicial forum. As to the enforceability of the policy under Connecticut contract law, the court held that "the fact that Travelers agrees to be bound by the arbitrator's decision is sufficient consideration to support the agreement to arbitrate." As to whether the policy provided for effective vindication of statutory rights, the court said simply, "In this instance, Ms. Brooks may vindicate her statutory causes of action in the arbitral forum." Brooks renewed her arguments on appeal.

## DISCUSSION

### A.

At oral argument, members of the panel questioned whether Travelers' arbitration policy provides adequately for vindication of federal statutory rights. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (holding that arbitration agreements for disputes arising under federal statutes will be honored "[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.") (second alteration in original) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The panel's questions focused, *inter alia*, on the following details of the policy.

1. The Travelers policy in Paragraph 11 provides: "Normally, the hearing shall be completed within one day. In unusual circumstances and for good cause shown, the arbitrator may schedule an additional hearing to be held within five business days."

Plaintiff argues that by allowing for only a one-day hearing, or "in unusual circumstances and for good cause shown" a second day, the policy places unreasonable obstacles in the way of plaintiff's presentation of her case. Travelers responded that the policy does not mandatorily limit the hearing to one day, or even two, and that other provisions of the policy (such as the provision of Paragraph 24 that incremental expenses shall be borne equally by the parties "[i]f the arbitration proceeding continues more than one day") imply that there is no limitation.[1]

While undoubtedly arbitrators may properly be encouraged to conduct proceedings expeditiously so as to avoid costly waste of time, the panel expressed concern that the policy's clear terms place the onus on plaintiff to show "unusual circumstances and [ ] good cause" to extend the hearing beyond a single day. The policy furthermore could easily be understood by an arbitrator to fix an absolute limit of two days.

At oral argument, members of the panel questioned whether these limitations might prevent a plaintiff from securing vindication of federal statutory rights, pointing out that it is by no means unusual for the presentation of evidence in suits under the federal employment discrimination statutes to exceed two days by a substantial margin. Furthermore, the time spent in the presentation of plaintiff's evidence is not within the plaintiff's exclusive control. Since the defendant is, of course, entitled

---

1. Travelers further contends that, assuming its policy does impose such a limitation, plaintiff has not demonstrated that the limitation would prevent her from presenting her case and therefore adequately vindicating her statutory rights.

to make objections and to cross-examine each witness the plaintiff presents, members of the panel hypothesized that by proliferating objections and extending its cross-examination of the plaintiff's witnesses, Travelers can effectively run out the plaintiff's time limitation. Also, the plaintiff has no control over how efficiently the arbitrator conducts the session. If the ambiguous policy language does restrict proceedings to one, or possibly two, days, we asked whether this could impair a plaintiff's ability to vindicate statutory rights.

2. With respect to the scope of relief available to the complainant, Paragraph 20B of the policy sets out three sentences, quoted in the margin.[2] The first sentence provides for compensatory damages only in cases of "direct" injury; the second sentence allows the arbitrator to order reinstatement of the employee "only if money damages are insufficient as a remedy;" the third sentence forbids punitive damages, injunctive relief and attorney's fees "[u]nless expressly provided for by applicable statute."

Members of the panel asked whether, depending on the facts of the particular case, this provision might bar a grant of relief to which a plaintiff might be entitled under federal statutes, as interpreted by governing caselaw.

The third sentence, for example, makes a plaintiff's entitlement to an arbitral award of injunctive relief or punitive damages depend on whether such relief is "expressly" provided for by the applicable statute. A statute might be silent or am-biguous on the availability of punitive damages or injunctive relief, but might be authoritatively interpreted by courts to provide for such relief. In such circumstances, Travelers' arbitration policy would appear to forbid relief that federal courts would grant, because the relief is not *"expressly"* provided for by the applicable statute.

The second sentence forbids the remedy of reinstatement unless "money damages are insufficient as a remedy." Federal employment discrimination statutes do not necessarily restrict reinstatement to circumstances where money damages are insufficient. The ADEA, for example, provides that "the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment [and] reinstatement or promotion...." 29 U.S.C. § 626(b); *cf. Selgas v. Am. Airlines, Inc.,* 104 F.3d 9, 12 (1st Cir.1997) (noting that "[u]nder Title VII, the first choice is to reinstate the plaintiff at the original employer; this accomplishes the dual goals of providing full coverage for the plaintiff and of deterring such conduct by employers in the future"). Thus, even under a statute that was authoritatively interpreted by courts to encourage the remedy of reinstatement and to provide for it regardless whether money damages might adequately compensate the plaintiff, the Travelers arbitration policy would arguably not allow it. We questioned whether an arbitration policy that

---

**2.** Paragraph 20B states in part:
The arbitrator shall have the power to award, in appropriate circumstances, money damages in an amount sufficient to compensate the aggrieved party for such direct injury as the arbitrator determines such party has suffered. The arbitrator shall have the authority to order reinstatement of employment to a former employee only if money damages are insufficient as a remedy. Unless expressly provided for by applicable statute, the arbitrator shall not have the authority to award punitive damages, attorney's fees or injunctive relief of any nature.

provides for a more limited remedy than would be awarded by federal courts interpreting a federal statute should be seen as providing for adequate vindication of federal statutory rights, or conversely whether a remedy that derives from case law should be considered a federal statutory right within the meaning of *Gilmer* and similar cases.

We noted also that the first sentence providing for compensatory damages includes a potentially problematic limitation. It permits damages only to compensate for "direct" injury, regardless whether plaintiff's rights under the statute might include entitlement to damages for indirect injury.

3. As to expenses incurred in the arbitration proceeding, the policy provides in Paragraph 24:

> Each side shall pay its own legal fees and expenses. All other expenses (except Postponement Fees or Additional Hearing Fees) of the arbitration, such as required travel and other expenses of the arbitrator (including any witness produced at the direction of the arbitrator), and the expenses of a representative of [the American Arbitration Association], if any, shall be paid completely by Travelers Group and affiliates. If the arbitration proceeding continues more than one day, the incremental expenses of the additional days shall be borne

equally by the parties. This allocation of expenses may not be disturbed by the arbitration award.

The panel also expressed concerns about this provision. Its language could be read to forbid arbitrators from deviating from the requirement that each side pay "its own legal fees." Certain federal statutes governing employment discrimination provide that attorneys' fees may be awarded to the prevailing party. *See, e.g.,* 29 U.S.C. § 626(b) (ADEA) (incorporating by reference 29 U.S.C. § 216(b) of the Fair Labor Standards Act, providing for attorneys' fees); *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 822 (2d Cir. 1997); 29 U.S.C. § 1132(g)(1) (ERISA); 42 U.S.C. § 2000e–5(k) (Title VII); 42 U.S.C. § 12205(ADA). A puzzling question arises whether the policy allows for the award of attorneys' fees where explicitly provided by statute, as implied by Paragraph 20B, or forbids any such award, regardless of the terms of the statute, as implied by Paragraph 24.[3] *See Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482 (D.C.Cir. 1997) (noting that arbitration must "provide[ ] for all of the types of relief that would otherwise be available in court"); *Graham Oil Co. v. ARCO Prods. Co.,* 43 F.3d 1244, 1247–48 (9th Cir.1995) (holding in the context of the Petroleum Marketing Practices Act that an arbitration agreement may not require a plaintiff to forfeit a statutory right to attorneys' fees).[4]

---

3. A further question is whether Paragraph 24's prohibition of any departure from the equal sharing of expenses if the proceeding continues more than one day is compatible with federal discrimination statutes allowing costs to the prevailing party. *See, e.g.,* 29 U.S.C. § 626(b) (ADEA); 29 U.S.C. § 1132(g)(1) (ERISA); 42 U.S.C. § 12205(ADA).

4. Plaintiff also challenged Paragraph 26 of the Travelers policy, which contains a one-year statute of limitations. Plaintiff argues that this provision is an explicit abridgement

of substantive rights guaranteed by statutes because it curtails the time in which a litigant could bring a number of claims, including actions for breach of contract under Connecticut law and violations of the Fair Labor Standards Act, the Connecticut Fair Employment Practices Act, or the Family and Medical Leave Act. *See Graham Oil Co.,* 43 F.3d at 1247–48; *Bailey v. Ameriquest Mortgage Co.,* 2002 WL 100391 (D.Minn. Jan.23, 2002). Travelers responds that the plaintiff, who brought this action within the one-year period, has suffered no prejudice.

* * *

Because Travelers, in the face of the panel's concerns, has abandoned its effort to compel enforcement of its policy against plaintiff Brooks, we have no need to resolve the question whether that policy may lawfully be enforced against a plaintiff claiming rights created by federal statute.

### B.

In response to Travelers' motion to dismiss the appeal because of its decision not to seek to compel plaintiff to arbitrate, plaintiff argued that, prior to dismissal, the court should vacate the district court's judgment dismissing the complaint. Travelers does not disagree. If we were simply to dismiss the appeal without comment or further order, that would leave standing the district court's order dismissing the complaint.

Notwithstanding Travelers' decision during the course of the appeal to abandon the objective that it won in the lower court judgment, this court retains jurisdiction to vacate the district court's judgment. *See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Russman v. Bd. of Educ. of Watervliet*, 260 F.3d 114, 121 (2d Cir.2001). Where the district court's dismissal of the action was granted to enforce the defendant's arbitration policy, and the defendant has decided in the midst of the appeal to forgo enforcing the arbitration policy against the plaintiff, the equities clearly favor vacating the district court's judgment.

### CONCLUSION

The judgment of the district court dismissing the action so as to compel the plaintiff to arbitrate is hereby vacated by reason of the defendant's concession that it will not seek to compel the plaintiff to arbitrate. The appeal is dismissed on motion of the defendant-appellee.