John REITER, Plaintiff–Appellant,

v.

MTA NEW YORK CITY TRANSIT AUTHORITY, Defendant– Appellee,

Metropolitan Transportation Authority of the State of New York and Mysore L. Nagaraja, Senior Vice President and Chief Engineer, Defendants.

Docket No. 04–5420–CV.

United States Court of Appeals, Second Circuit.

Argued: Aug. 26, 2005.

Decided: July 20, 2006.

Gregory G. Smith, Gregory G. Smith & Associates, New York, NY, for Appellant John Reiter.

Steven M. Stimell, Bryan Cave LLP, New York, N.Y. (Jay P. Warren, on the brief), for Appellee MTA New York City Transit Authority.

Before SACK, KATZMANN, and B.D. PARKER, Circuit Judges.

B.D. PARKER, Circuit Judge.

Plaintiff–Appellant John Reiter appeals from a judgment of the United States District Court for the Southern District of New York (Gorenstein, *M.J.*) limiting attorneys' fees under Rule 68.[1] The award

---

1. The parties consented to jurisdiction by a magistrate judge for resolution of the motions for attorneys' fees. *See* 28 U.S.C. § 636(c)(1).

followed a trial on a claim of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Reiter sued Defendant–Appellee MTA New York City Transit Authority ("NYCTA") for monetary and equitable relief, principally seeking compensatory damages plus restoration to the job from which he had been demoted. After the litigation started, the NYCTA served an Offer of Judgment for $20,001 (the "Offer") under Rule 68. The Offer, however, made no mention of equitable relief. The case proceeded to trial and the jury awarded Reiter $140,000. The district court then awarded Reiter substantial equitable relief, the most prominent feature of which was his restoration to his job. *Reiter v. Metro. Transp. Auth.*, 2003 WL 22271223, at *14 (S.D.N.Y. Sept.30, 2003). But the district court also granted the NYCTA's motion for a new trial conditioned on Reiter's agreement to accept a remittitur to $10,000. *Id.* at * 16.

Reiter agreed to accept that amount and the parties agreed to permit a magistrate judge to determine attorneys' fees in the light of Reiter's success and NYCTA's Offer. This task required the magistrate judge to compare the monetary relief with the equitable relief Reiter secured. After that comparison, the magistrate judge concluded that the equitable relief did not have "any significant value" and that the final monetary award was less than the Offer. The court then awarded Reiter only pre-Offer attorneys' fees. Since this conclusion was clearly erroneous, we reverse. We also remand so the court can consider additional factors related to the calculation of attorneys' fees.

### Background

The NYCTA provides public transportation in New York and is comprised of several departments, including the Capital Program Management ("CPM") depart-ment, which is responsible for major architectural and engineering projects. In 1999, Reiter was employed by NYCTA as Deputy Vice President of Engineering Services ("DVP Engineering"), making him the head of the Engineering Services Department. That Department, which was part of the CPM, was responsible for major NYCTA engineering projects. As DVP Engineering, Reiter was one of thirteen senior-level executives who reported directly to the Senior Vice President and Chief Engineer of CPM, and the position required Reiter to be a licensed engineer or architect. The Department had an annual budget in excess of one billion dollars.

As DVP Engineering, Reiter earned around $119,000 per year. Eight senior executives reported directly to him and he exercised supervisory responsibility over 900 employees. As a perquisite of the position, Reiter had a large, prominent corner office on the seventh floor (near his staff) with a front view of Manhattan and a confidential secretary who was among the most experienced secretaries in the organization. The NYCTA's salary and compensation structures are based on the "Hay Points" system, which ranks the importance and difficulty of various positions. Hay Points are essentially an objective measure of a position's value in terms of responsibility, complexity and salary. In his position, Reiter was given 1560 Hay Points—a relatively large amount—to reflect his responsibilities and salary.

In January 2000, Reiter received a negative annual performance review and was rated as a marginal employee. Reiter disagreed with the evaluation and filed several complaints through the internal appeals process and with the Equal Employment Opportunity Commission ("EEOC"), alleging that he received the negative evalua-

tion as retaliation because his wife, who also worked for the NYCTA, had filed separate EEOC charges alleging discrimination and harassment.

In June 2001, Reiter was demoted. He was transferred to the position of Deputy Vice President of Technical Services ("DVP Technical"). The Technical Services Department was responsible for working with the customers of CPM on the acceptance of capital projects. Its role was to ensure that capital projects built by Engineering Services could be used by customers and were capable of being maintained by Engineering Services over time. Reiter contended that the transfer was both retaliatory and a substantial demotion.

He pointed out that as DVP Engineering, he had supervisory responsibility for 900 employees and eight executives directly reported to him. As DVP Technical, he had no staff and no direct reports. While Engineering Services was the largest department within CPM, with roughly 60% of its workforce, Technical Services was one of the smallest departments, with approximately ten employees. Moreover, Reiter testified that in his new position he had no specifically assigned responsibilities or functions and did not have enough projects to fill his work day. While Engineering Services oversaw the development and implementation of large capital projects, Technical Services essentially ensured that the projects completed by Engineering Services were used and maintained. Moreover, in his new position, Reiter reported to the Vice–President of Technical Services, not to senior management of CPM as he done as DVP Engineering. The new position did not require that Reiter be a licensed architect or an engineer. In addition, Reiter's demotion resulted in the loss of a number of substantial perquisites. He lost his confidential secretary, was moved from his large corner office on the seventh floor with a front view of Broadway to a small, less desirable one on the second floor with a view of an alley, and lost all of his Hay Points.

In April 2001, Reiter sued the NYCTA. His complaint alleged that he was subject to retaliation—in the form of verbal reprimands, negative performance reviews, and demotion—for filing his initial EEOC charge in March 2000. By way of relief, Reiter sought compensatory damages as well as equitable relief. Specifically, he alleged that he was entitled to return to his prior position, along with all of the benefits of that position.

In July 2001, defendants made an Offer of Judgment under Rule 68. In it they proposed allowing judgment to be taken against them in the amount of $20,001, "together with costs and reasonable attorneys fees accrued in this litigation to date." The Rule 68 Offer ignored the non-monetary relief Reiter had sought. Reiter did not accept the Offer and the case proceeded to trial with the jury deciding liability and compensatory damages and the court addressing equitable relief.

Following a six-day trial, the jury returned a verdict in favor of Reiter, finding that NYCTA unlawfully retaliated against him for filing an EEOC complaint and awarded him $140,000 in compensatory damages for emotional suffering. After the verdict, the NYCTA moved to vacate the award on the ground that Reiter had failed to present sufficient evidence of emotional distress. *See* Fed.R.Civ.P. 50. In the alternative, the NYCTA moved for a new trial or for a remittitur reducing the award to $5,000–$10,000. *See* Fed. R.Civ.P. 59(a) & (e).

While opposing these motions, Reiter continued to pursue equitable relief, seeking, among other things, reinstatement to his former position with the restoration of

various perquisites of his job and an injunction against future retaliation. Reiter also sought back pay, front pay, and pre- and post-judgment interest.

Ultimately, the court denied the defendant's motion for judgment as a matter of law but agreed to a new trial unless Reiter accepted $10,000. Reiter accepted the remittitur and ultimately received that amount. Judge Koeltl granted Reiter equitable relief. He ordered Reiter reinstated to his former position of DVP Engineering, with an office comparable to the one he had prior to the demotion, the return of a confidential secretary and the restoration of lost Hay Points. The parties then consented to have Reiter's request for attorneys' fees resolved by a magistrate judge.

Before the magistrate judge, Reiter sought substantial attorneys' fees at a rate of $350 per hour for two attorneys and $125 per hour for one attorney and court costs. NYCTA, on the other hand, contended that its Offer cut off attorneys' fees and costs incurred after the Offer.

Ultimately, the magistrate judge agreed with the NYCTA and denied Reiter fees and costs incurred after the Rule 68 Offer. *Reiter v. Metro. Transp. Auth.*, 224 F.R.D. 157, 159 (S.D.N.Y.2004). He noted that the monetary award was less than the amount in the Offer and then proceeded to completely discount the equitable relief that Judge Koeltl had awarded on the ground that none "of the various injunctive elements of the final judgment [had] any significant value." *Id.* at 169. Specifically, the court concluded that Reiter's reinstatement to his former position, responsibilities, and status, was "of limited value," and "the restoration of Hay Points had no practical or economic significance." *Id.* at 168. The court also concluded that the value of a confidential secretary and desirable office space "was minimal, if any-

thing." *Id.* at 168–69. Based on plaintiff's failure to accept NYCTA's "more favorable" monetary Offer of $20,001, the magistrate judge ruled that Reiter was foreclosed from post-Offer attorneys' fees and costs. He summarized his thinking as follows:

> While the Court has discussed the value of each element of the final judgment separately, Rule 68 requires a comparison of the entire final judgment against the entire Offer. But stripped of the vindication value that might be attributed to Reiter's gratification in having obtained what he sought in a final judgment, the equitable elements of the final judgment together are of such limited value that the Court can only conclude that they would not be considered more favorable by an objective, reasonable person than a $10,001 cash payment. As a result, Reiter must bear any costs or fees he incurred after the making of the Offer.

*Id.* at 169.

Having found that Reiter could not recover fees incurred subsequent to the Offer, the magistrate judge proceeded to calculate pre-Offer attorneys' fees and costs as $17,075.42. *Id.* Reiter's counsel sought compensation at $350 per hour for senior counsel and $150 per hour for junior counsel, arguing that these were the prevailing rates for experienced Title VII lawyers in the Southern District of New York. The court relied primarily on the retainer agreement rate, rather than prevailing current market rates, concluding that the amount actually charged by counsel was a dispositive indicator of a reasonable rate. Since Reiter's retainer agreement called for $175 per hour for in-office work and $200 for out-of-office work, the district court awarded $200 per hour to Reiter's two lead attorneys. *Reiter v. Metro. Transp. Auth.*, 2004 WL 2072369, at *8

(S.D.N.Y. Sept.10, 2004). The court decreased the retainer rate to $125 per hour for Reiter's third attorney because she was less experienced. *Id.* at *7.

Reiter moved for reconsideration, arguing that higher hourly rates should apply based on the current market rates. The court based its determination on the plaintiff's retainer-based rate and rejected counsel's contention that he had not had a fair opportunity to prove customary rates. According to the magistrate judge's reasoning, Judge Koeltl's ruling that counsel provide to NYCTA only a copy of plaintiff's retainer agreement did not mean that its terms would be dispositive and "in no way prevented plaintiff's counsel from providing evidence of their customary rate in support of the attorney's fees application."

This appeal followed.

## DISCUSSION

■ Reiter principally raises two issues on appeal. First, he contends that the court below improperly denied attorneys' fees incurred after the Offer. Second, to the extent it awarded fees, he claims the court erred by not applying prevailing market rates. We review *de novo* a district court's interpretation of the Federal Rules of Civil Procedure, *Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469 (2d Cir.1998), and review for clear error any findings of fact. *Id.* Further, we review a court's decision to award or deny attorneys' fees for abuse of discretion and its calculation of those damages *de novo*. *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 26 (2d Cir.2002).

■ First, Reiter contends that the district court erred when it denied attorneys' fees and costs incurred after the Offer because the equitable relief he obtained, along with the $10,000 monetary award,

was more favorable than the Offer. We agree. Rule 68 is a cost-shifting rule designed to encourage settlements without the burdens of additional litigation. Rule 68 provides: "If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68. The Rule thus requires a court to compare the offer to the judgment and decide which is more favorable. The magistrate judge, undertaking that exercise, concluded that the Offer was more favorable than the judgment. The principal basis for this result was his conclusion that none of the equitable relief Judge Koeltl granted to Reiter had any significant value and that no reasonable person would value the relief more than a $10,001 cash payment. *Reiter*, 224 F.R.D. at 169. This conclusion is clearly erroneous. Its most conspicuous shortcomings are that it: (1) fails to appreciate the significance of equitable relief in civil rights litigation, and (2) draws indefensible conclusions about the worthlessness of the equitable relief Reiter obtained.

Turning to the question of whether Reiter's reinstatement had any value, we note that equitable relief lies at the core of Title VII, which expressly provides for nonmonetary relief such as "reinstatement" and "hiring." 42 U.S.C. § 2000e-5(g). In *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Supreme Court commented that:

the purpose of Title VII[is] to make persons whole for injuries suffered.... This is shown by the very fact that Congress took care to arm the Courts with full equitable powers. For it is the historic purpose of equity to secure complete justice ... Where federally protected rights have been invaded, it has been the rule from the beginning that

courts will be alert to adjust their remedies so as to grant the necessary relief. *Id.* (internal quotation marks, citations, and alterations omitted).

 Under Title VII, equitable relief is not incidental to monetary relief. We, as well as other circuits, have repeatedly emphasized the importance of equitable relief in employment cases. *See Brooks v. Travelers Ins. Co.,* 297 F.3d 167, 170 (2d Cir.2002) (noting that under Title VII reinstatement has been interpreted as the first choice); *Allen v. Autauga County Bd. of Educ.,* 685 F.2d 1302, 1305 (11th Cir.1982) (reinstatement required "except in extraordinary cases"); *Williams v. City of Valdosta,* 689 F.2d 964, 977 (11th Cir.1982) (reinstatement is a remedy to which plaintiff "is normally entitled . . . absent special circumstances"); *Jackson v. City of Albuquerque,* 890 F.2d 225, 233 (10th Cir.1989) (reinstatement "is ordinarily to be granted") (emphasis omitted). Under Title VII, the best choice is to reinstate the plaintiff, because this accomplishes the dual goals of providing make-whole relief for a prevailing plaintiff and deterring future unlawful conduct. *Brooks,* 297 F.3d at 170 (citing *Selgas v. Amer. Airlines,* 104 F.3d 9, 12 (1st Cir.1997)). *See also Che v. Mass. Bay Transp. Auth.,* 342 F.3d 31, 43 (1st Cir. 2003) ("We have recognized that reinstatement is an important remedy because it most efficiently advances the goals of Title VII by making plaintiffs whole while also deterring future discriminatory conduct by employers.") (internal quotation marks omitted). By misapprehending the significance of the equitable relief Reiter obtained, the magistrate judge significantly under-valued what Reiter lost and what he was able to recover in litigation. As the Eleventh Circuit has noted in an analogous context:

> When a person loses his job, it is at best disingenuous to say that money damages can suffice to make that person whole. The psychological benefits of work are intangible, yet they are real and cannot be ignored. . . . We also note that reinstatement is an effective deterrent in preventing employer retaliation against employees who exercise their constitutional rights. If an employer's best efforts to remove an employee for unconstitutional reasons are presumptively unlikely to succeed, there is, of course, less incentive to use employment decisions to chill the exercise of constitutional rights.

*Allen,* 685 F.2d at 1306. These factors underpin the overarching preference in employment discrimination cases for reinstatement. *See NLRB v. Thalbo Corp.,* 171 F.3d 102, 110 (2d Cir.1999) (finding "the responsibility of a court that finds a [Title VII] violation is to fashion equitable relief to make the claimant whole"); *see also Northcross v. Bd. of Educ. of the Memphis City Sch.,* 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (construing attorney's fees provisions in civil rights statutes to be justified where plaintiffs injured by discrimination are successful in obtaining injunctive relief). "Reinstatement advances the policy goals of make-whole relief and deterrence in a way which money damages cannot." *Squires v. Bonser,* 54 F.3d 168, 172–73 (3d Cir.1995).

Having rather easily concluded that the equitable relief Reiter secured was of considerable importance under Title VII's overall remedial framework, we now turn to the more difficult issue of whether that relief—the return of his old job—was worth more than $10,000. We recognize that "it is difficult to compare monetary relief with non-monetary relief." 12 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3006.1, 127 (2d ed.1997). Justice Brennan described this problem best by stating: "[I]f a plaintiff

recovers less money than was offered before trial but obtains potentially far-reaching injunctive or declaratory relief, it is altogether unclear how the Court intends judges to go about quantifying the 'value' of the plaintiff's success." *Marek v. Chesny*, 473 U.S. 1, 32, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (Brennan, *J.*, dissenting). At least one court has suggested that this inherent difficulty counsels in favor of disregarding equitable relief for Rule 68 purposes. *See Real v. Cont'l Group, Inc.*, 653 F.Supp. 736, 739 (N.D.Cal.1987) (concluding that "the better course is to compare monetary awards only").

■ However, we are not convinced that the difficulty of comparing a monetary offer and judgment that includes non-monetary elements means that Rule 68 should not be applied in such cases. Nothing in the language of Rule 68 suggests that a final judgment that contains equitable relief is inherently less favorable than a Rule 68 offer that contains monetary relief. As the Sixth Circuit has noted, in the Rule 68 context "a favorable judgment and an injunction can be more valuable to a plaintiff than damages." *Andretti v. Borla Performance Indus. Inc.*, 426 F.3d 824 (6th Cir.2005). Most federal courts adopt this approach. *See, e.g., Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 439, 442 (9th Cir. 1982) (considering offer of judgment consenting to an injunction against disclosure of information under Rule 68); *Lish v. Harper's Magazine Found.*, 148 F.R.D. 516, 520 (S.D.N.Y.1993) (considering judgment's grant of authorial right to control publication and judicial determination of copyright violation); *Lightfoot v. Walker*, 619 F.Supp. 1481, 1485–86 (S.D.Ill.1985) (considering offer of judgment consenting to prison health care reform). *See* Thomas L. Cubbage III, Note, *Federal Rule 68 Offers of Judgment and Equitable Relief: Where Angels Fear to Tread*, 70 Tex.

L.Rev. 465, 475 (1991) (surveying court decisions involving the application of Rule 68 to equitable relief and articulating a set of criteria for evaluating the favorableness of equitable offers and judgments). We follow this approach and decline to disregard equitable relief for Rule 68 purposes.

■ In determining the value of the relief, the defendant bears the burden of showing that the Rule 68 offer was more favorable than the judgment. *See* Wright § 3006.1 ("Rule 68 is actually a tool for defendant to use, and defendant alone determines the provisions of the offer. Since defendant has drafted those provisions, the courts generally interpret the offer against the defendant. Consistent with that, the burden should be on defendant to demonstrate that those provisions are in fact more favorable than what plaintiff obtained by judgment.") Here, the NYCTA failed to carry that burden. Its Offer proposed only the amount of $20,001. It failed to confront Reiter's request for equitable relief and was conspicuously silent as to whether Reiter would remain demoted, in a self-evidently inferior position. The magistrate judge, in the face of this omission, concluded that the equitable relief was essentially valueless and, in any event, would not be regarded by any reasonable person as worth more than $10,000.

Readily acknowledging the difficulties posed by a comparison of monetary and equitable relief, we are still confounded by this conclusion. As DVP Engineering, Reiter shared high-level executive responsibility for the NYCTA's major architectural and engineering projects. The budget of his department exceeded one billion dollars, eight senior executives reported directly to him, and he headed a staff of more than 900 employees. After his demotion to DVP Technical, he had no staff, no direct reports, no corner office, no Hay Points and found himself in one of the

NYCTA's smallest departments with ten employees. The magistrate judge found these differences "of limited value" and concluded that no objective, reasonable person would prefer the more important job to a $ 10,000 cash payment. While the difference cannot be quantified with precision, we nonetheless think that the opposite is true. Reiter was a highly compensated, senior executive in one of the world's largest and most important public transportation agencies. For him, as for many who occupy such positions after long years of service, the personal satisfaction and sense of gratification and achievement derived from first being given, and then bearing, significant professional responsibilities cannot be understated. A powerful indication that such responsibilities are coveted is that Reiter spent years of litigation to regain them.

We have no difficulty concluding that any senior executive worthy of the title (who is rational and who is still anxious for responsibilities) would, at a moment's notice, exchange a job with no staff, no budget, no direct reports, and a work force of ten for a job with 900 employees and eight senior direct reports in a department with a billion-dollar budget. Further, we have no difficulty opining that any such rational executive would more likely than not jump at the chance if it were priced at just $10,000—an amount totaling less than 10% of a single year's salary. In sum, while monetizing equitable relief will, in many instances, pose vexing problems (ones we leave for another time) we have little difficulty concluding that Reiter ultimately recovered more than the Offer and that, consequently, it did not cut off his entitlement to post-Offer attorneys' fees.

 Next, plaintiff contends that the award should be increased because the district court failed to apply the current market hourly rate for the Southern District of New York. In determining reasonable attorney's fees, a district court must calculate a lodestar figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate. *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The lodestar figure should be based on market rates "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). It is well-established that the prevailing community a district court should consider to determine the lodestar figure is normally "the district in which the court sits." *Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir.1983). *See also A.R. v. N.Y. City Dep't of Ed.,* 407 F.3d 65, 79 (2d Cir.2005) (engaging in extensive discussion as to whether in that case the "prevailing rates in the district in which the court [sat]" should have been applied). The rates used by the court should be " 'current rather than historic hourly rates.' " *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir.1998) (quoting *Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)); *see also Cohen v. W. Haven Bd. of Police Comm'rs,* 638 F.2d 496, 506 (2d Cir.1980) ("[F]ees that would be charged for similar work by attorneys of like skill in the area should [be] the starting point for determination of a reasonable award.").

In this case, the magistrate judge found that $200 per hour was a reasonable rate for two attorneys, using the hourly rate set forth in Reiter's attorneys' retainer agreement ($175), and increasing it by $25 per hour to adjust for inflation. *Reiter,* 2004 WL 2072369, at *8. By referring to the retainer agreement, the court also found the hourly rate of $125 to be appropriate for the junior attorney. *Id.* at *7. This

approach was erroneous. The record indicates that Reiter's attorneys set the retainer rate because, in part, they were offering a discount to a plaintiff in a civil rights case. The magistrate judge failed to give appropriate weight to this explanation. Important public policy considerations dictate that we should not punish an "under-charging" civil rights attorney. *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir. 1988) (holding that an award of attorney fees may be assessed at a rate greater than the rate in a fee agreement). The Supreme Court in *Blum* also noted that courts "must avoid[.] ... decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return." *Blum*, 465 U.S. at 895, 104 S.Ct. 1541. Thus, the magistrate judge should have taken into account the current market rate in the Southern District of New York. Accordingly, we also vacate the fee award and remand for additional consideration of the rate " 'prevailing in the [Southern District] for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Farbotko v. Clinton County*, 433 F.3d 204, 210 (2d Cir.2005) (quoting *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541).[2]

### CONCLUSION

For the foregoing reasons, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion. We take this opportunity to express our concern over the current formulation of Rule 68 and to recommend to the Advisory Committee on Civil Rules and the Standing Committee on Practice and Procedure of the Judicial Conference of the United States that they address the question of how an offer and judgment should be compared when non-pecuniary relief is involved. *See Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure, et al.*, 98 F.R.D. 337, 363 (1983) (rejecting proposals to amend Rule 68 to give the district courts discretionary power to refuse to award costs in some circumstances); *Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate Procedure, et al.*, 102 F.R.D. 407, 432–438 (1984) (same). The Clerk is directed to send copies of this opinion to the Chairman and Reporter of the Judicial Conference Advisory Committee on Civil Rules and the Standing Committee on Practice and Procedure.

---

**2.** We find no merit in Reiter's contention that the district court erred in eliminating 8.1 hours based on what he describes as a clerical error in his time records. The court subtracted 8.1 hours from the request of Reiter's counsel because the summary indicated that he had spent 9 hours drafting discovery demands on a particular day, but the contemporaneous time records showed that he had expended only 0.9 hours that day on the task. Because Reiter never presented an explanation for this time record discrepancy prior to the district court's decision and there were no circumstances warranting reconsideration, we find no abuse of discretion in the district court's elimination of those hours.