**Jacquelyn TODARO and Maria H. Moscarelli, Plaintiffs,**

v.

**SIEGEL FENCHEL & PEDDY, P.C., William D. Siegel, Saul R. Fenchel, Tracie P. Peddy, and Andrew G. Cangemi, Defendants.**

No. 04–CV–2939 JS/WDW.

United States District Court, E.D. New York.

March 24, 2010.

Steven Ian Locke, Esq., Jeffrey I. Schulman, Esq., Carabba Locke LLP, New York, NY, for Plaintiffs.

Philip D. Nykamp, Esq., Patrick Brian Fife, Esq., Twomey, Latham, Shea, & Kelly, LLP, Riverhead, NY, Kevin M. Fox, Esq., Russo Fox & Karl, Hauppauge, NY, for Defendants.

SEYBERT, District Judge:

Pending before the Court is Plaintiffs' motion for attorneys' fees, costs, pre-judgment interest, and post-judgment interest. For the foregoing reasons, Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

The Court held a jury trial in this matter on August 11–22, 2008. The jury found in favor of Plaintiff Maria H. Moscarelli on her Title VII/NYSHRL claim for sex and/or pregnancy discrimination, and awarded her $203,838.70 in back pay, $500,000 in punitive damages, and $1.00 in nominal damages. The jury also found in favor of Plaintiff Jacquelyn Todaro's Equal Pay Act claim, awarding her $16,499.75 in damages, but did not find for her on her Title VII claim. Defendants then moved to set aside the verdict, and for judgment as a matter of law in their favor on all claims.

On September 25, 2009, 2009 WL 3150408, the Court granted Defendants' motion in part and denied it in part. In so doing, the Court upheld the jury's finding of liability, increased Ms. Moscarelli's compensatory award to $222,165.58, reduced Ms. Moscarelli's punitive award to $50,000, ordered a remittitur of Ms. Todaro's compensatory award to $8,089.25, and granted Ms. Todaro $8,089.25 in liquidated damages. On October 23, 2009, after Ms. Todaro accepted the Court's remittitur, the Clerk of the Court entered an Amended Judgment reflecting Ms. Moscarelli's total award of $272,165.58 and Ms. Todaro's total award of $16,178.50.

This motion followed.

## DISCUSSION

### I. Attorneys' Fees

In their motion, Plaintiffs seek $432,646.25 in attorneys' fees, reflecting proposed hourly rates of $400 for Carabba Locke LLP partner Steven I. Locke, $335 for associate Jeffrey Schulman, $290 for

associate Jessica Vulpis, and $85 for paralegal Magdalena Kot.

Defendants object to Plaintiffs' fee request, arguing: (1) Carabba Locke's billing records lack sufficient detail; (2) the requested hourly rates are too high; (3) the fees should be reduced due to Plaintiffs' limited success on the merits; and (4) Carabba Locke billed excessive amounts of time. The Court discusses each of these arguments, in turn.

### 1. *Billing Records*

■ First, Defendants contend that Plaintiffs' motion should be denied in its entirety because Carabba Locke's billing records supposedly lack sufficient detail concerning the tasks performed. The Court disagrees. On the whole, Carabba Locke's billing entries sufficiently describe what its attorneys did (*e.g.*, "Trial; draft closing—13 hours"; "Attend Trial—9 hours"; "Review & revise cross examinations; jury charge; review same—7.5 hours"). Defendants also fault Carabba Locke for not listing the specific attorney who performed each task. But Carabba Locke employed only three attorneys on this case (Mr. Locke, Mr. Schulman, and Ms. Vulpis) and seeks a different hourly rate for each of them. Thus, the Court can easily decipher who did what. And, consequently, Plaintiffs have provided the Court with enough detail to justify a full fee award.

### 2. *Billing Rates*

Second, Defendants contend that Plaintiffs inappropriately seek hourly rates that, although justified for S.D.N.Y. cases, are too high by E.D.N.Y. standards. In this regard, Defendants note that, in *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175 (2d Cir.2009), the Second Circuit held that E.D.N.Y. litigants cannot recover S.D.N.Y. rates unless they "persuasively establish

that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." The Court agrees with Defendants that *Simmons* controls. And the Court further agrees that Plaintiffs have not "persuasively established" their right to hourly rates higher than those awarded in the E.D.N.Y. The Court thus turns to whether Plaintiffs' requested rates are appropriate for the E.D.N.Y., or need to be adjusted downward.

### A. *Mr. Locke*

■ Mr. Locke is one of Carabba Locke's founding partners. He has been practicing law since 1993, with a primary focus on labor and employment matters. In addition to his legal practice, Mr. Locke has clerked for a United States District Judge and published six law review articles, mostly dealing with labor and employment issues. Although he maintains his office in Manhattan, Mr. Locke has practiced extensively in the E.D.N.Y. This practice has included employment discrimination defense work in which Mr. Locke charged his clients $400/hr. for his work. Locke Reply Dec. ¶ 6.

In light of Mr. Locke's experience, his overall good reputation within this district, and the willingness of at least one E.D.N.Y. client to pay his requested fees, the Court believes that $400/hr is an appropriate rate for his services, even for this district. Indeed, Judge Block recently awarded $400/hr to the lead partner who handled a similar Title VII matter. *See Luca v. County of Nassau*, 04–CV–4898, 698 F.Supp.2d 296, 301–02, 2010 WL 307027, *3 (E.D.N.Y.2010). Consequently, the Court awards Plaintiffs' $206,000 for Mr. Locke's services, before other adjustments.

### B. *Mr. Schulman*

■ Mr. Schulman graduated law school in 2003, and joined Carabba Locke as an associate later that year. In 2004, he was admitted to the New York bar. Plaintiffs seek $335/hr for his time.

Defendants contend that, in so doing, Plaintiffs improperly seek to collect 2009 rates for work performed between 2004 and 2009. To some extent, the Court agrees. Plaintiffs are entitled to recover Carabba Locke's "current rather than historic hourly rates." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006). But, awarding "current" rates does not mean applying Mr. Schulman's current rate, as a senior associate, to work he performed as a junior and mid-level associate. Instead, it means awarding today's rate for an attorney who possessed Mr. Schulman's skill and experience, "when the work was done." *Lochren v. County of Suffolk*, 344 Fed.Appx. 706, 710 (2d Cir. 2009). In simpler terms, Plaintiffs can recover 2009 junior associate rates for Mr. Schulman's work as a junior associate, 2009 mid-level associate rates for Mr. Schulman's work as a mid-level associate, and 2009 senior associate rates for Mr. Schulman's work as a senior associate.[1]

Using this formula, Plaintiffs' requested $335/hr is much too high for the E.D.N.Y., even for Mr. Schulman's recent work. Courts within the E.D.N.Y. typically award between $100 and $150 an hour for junior associates, and between $200 and $250 an hour for senior associates. *See GuideOne Specialty Mut. Ins. Co. v. Cong. Adas Yereim*, 04–CV–5300, 2009 WL 3241757, *3 (E.D.N.Y.2009) (collecting cases). Considering these rates, the Court awards Plaintiffs $150/hr for Mr. Schulman's 2005 work, $175/hr for his 2006 work, $200/hr for his 2007 work, $225/hr for his 2008 work, and $250/hr for his 2009 work.[2] Accordingly, the Court awards Plaintiffs $123,062.50 for Mr. Schulman's work, before other adjustments.

### C. *Ms. Vulpis*

Plaintiffs seek $290 an hour for Ms. Vulpis' services. Ms. Vulpis billed 56 hours, all of it as a third-year associate in 2008. The Court therefore awards Plaintiffs $175/hr for Ms. Vulpis' services, the same rate it awarded for Mr. Schulman's third-year associate work. This comes to $9,800, before other adjustments.

### D. *Ms. Kot*

■ Plaintiffs seek $85 an hour for Ms. Kot's paralegal services. This rate is reasonable, and comparable to rates the E.D.N.Y. has recently awarded. *See Finkel v. Jones Lang LaSalle Americas, Inc.*, 08–CV–2333, 2009 WL 5172869, *5 (E.D.N.Y.2009) ($80/hr for paralegals); *Morgenstern v. County of Nassau*, 04–CV–0058, 2009 WL 5103158, *9 (E.D.N.Y.2009) ($100/hr for paralegals). Accordingly, the Court awards Plaintiffs $3,208.75 for Ms. Kot's work.

---

1. Plaintiffs have not broken down Mr. Schulman's yearly hours. But the Court has taken this initiative. Mr. Schulman billed no time to this case in 2004, when he was a first year associate. He billed 125.5 hours in 2005, as a second year associate. He billed 85.25 hours in 2006, as a third year associate. He billed 121.75 hours in 2007, as a fourth year associate. He billed 261.25 hours in 2008, as fifth year associate. And he billed 24.75 hours in 2009, as a sixth year associate.

2. Mr. Locke also had more experience in 2009 than in 2004. But he remained Plaintiffs' lead counsel, and a Carabba Locke partner, throughout this time period. Moreover, in the Court's experience, the learning curve for new attorneys (and thus, their worth to clients) is much steeper during their first few years of legal practice. Consequently, the Court does not see any need to reduce Mr. Locke's hourly rates to reflect his increased experience as this litigation progressed.

### E. Total

Before other adjustments, the Court awards Plaintiffs' $342,071.25 in attorneys' fees and paralegal work.

### 3. Success On The Merits

 Defendants also contend that the Court should reduce Plaintiffs' fee award due to Plaintiffs' limited success on the merits. The Court has broad discretion to reduce a fee award based on a plaintiff's "partial or limited success." *Kassim v. City of Schenectady,* 415 F.3d 246, 256 (2d Cir.2005); *see generally Cover v. Potter,* 05–CV–7039, 2008 WL 4093043, *8 (S.D.N.Y.2008) (reducing requested attorneys' fees by 40%); *Lynch v. Town of Southampton,* 492 F.Supp.2d 197, 214 (E.D.N.Y.2007) (reducing requested attorneys' fees by 10%). Here, Defendants argue, Plaintiffs' "focus" was on Ms. Todaro's claim, as indicated by, among other things, the fact that Carabba Locke's bills indicate that Plaintiffs' counsel communicated with Ms. Todaro almost twice as much as they did with Ms. Moscarelli. And Defendants note that Ms. Todaro lost her principal Title VII claim, and received only a small recovery under the Equal Pay Act. In response, Plaintiffs argue that Ms. Moscarelli's successful sex and/or pregnancy discrimination claim was "sufficiently intertwined" with Ms. Todaro's unsuccessful one that no fee reduction is warranted.

To some extent, the Court agrees with both Plaintiffs and Defendants. Plaintiffs are right that Ms. Moscarelli's and Ms. Todaro's Title VII claims had significant overlap. Even if Ms. Todaro had never brought a Title VII claim, Plaintiffs' counsel would likely have needed to research and brief many of the same legal questions. Likewise, even without Ms. Todaro's Title VII claim, Plaintiff's counsel would have needed to undertake much of the same factual investigation concerning Defendants' past and present sex and pregnancy discrimination practices. And this investigation probably would have at least included interviewing and deposing Ms. Todaro concerning her experiences.

At the same time, Defendants accurately contend that litigating Ms. Todaro's unsuccessful Title VII claim caused Plaintiffs' counsel to spend more time than they otherwise would have. It is likely, for instance, that Plaintiffs' counsel would have spent less time communicating with Ms. Todaro if she brought just an Equal Pay Act claim, even if she also served as a witness with respect to Ms. Moscarelli's Title VII claim. Similarly, Plaintiffs' counsel likely would have drafted shorter (and thus less time consuming) briefs without having to address Ms. Todaro's Title VII claim. Plaintiffs' counsel would probably also have spent less time preparing Ms. Todaro for deposition and trial. And Ms. Todaro's actual testimony likely would have taken less time.

Considering these factors, the Court has decided to reduce Plaintiffs' requested attorneys' fees by 30%, based upon Ms. Todaro's lack of success on her Title VII claim. This reflects the Court's rough estimate concerning how much time Plaintiffs' counsel would have saved by not litigating Ms. Todaro's unsuccessful claim. In so doing, the Court reduces Plaintiffs' fee award to $239,449.86.

### 4. Carabba Locke's Alleged Excessive Billing

 Defendants also argue that Carabba Locke spent an excessive number of hours on various litigation tasks. Specifically, Defendants protest Carabba Locke expending 33.75 hours to draft Plaintiffs' Rule 56.1 Statement, 71.25 hours to oppose Defendants' summary judgment motion, 89 hours to draft the pre-trial order, 23 hours responding to Defendants' motion for sep-

arate trials; 82 hours drafting jury instructions, 10 hours drafting the verdict sheet, and 55.5 hours (pre-reply brief) drafting this motion. For the most part, the Court does not believe that the time spent on these entries is excessive, given the complexity of this case. The Court agrees, however, that 10 hours is too much time to spend drafting a verdict sheet. There is, however, no evidence that Plaintiffs' counsel actually spent 10 hours doing so. Rather, the billing records reflect two entries, totaling 4.5 hours, devoted exclusively to drafting the verdict sheet. The billing records also include several other entries, totaling 20.25 hours, in which drafting the verdict sheet is listed among many tasks performed that day (preparing voir dire, drafting proposed jury instructions, reviewing trial exhibits, etc.). There is no easy way to filter out the time Plaintiffs' counsel spent on the verdict sheet instead of these other tasks. Nevertheless, in light of Plaintiffs' counsel already spending at least 4.5 hours exclusively on the verdict sheet, the Court finds that a small reduction of the other time spent is appropriate. Accordingly, the Court deducts 1 hour of Ms. Vulpis' time and 1 hour of Mr. Schulman's 2008 time as excessive. This comes to $400, reducing Plaintiffs' total fee award to $239,049.86.

■ Defendants also contend that the entries they have identified are "merely some examples" of Carabba Locke's overbilling. But "[w]ithout specific reference to [additional] disputed entries," the Court will not scour Carabba Locke's billing records to uncover other supposed abuses. *See Vilkhu v. City of New York*, 06–CV–2095, 2009 WL 1851019, *14–15, 2009 U.S. Dist. LEXIS 73696, *50–51 (E.D.N.Y. June 25, 2009). In any event, the Court finds as a general matter that Carabba Locke did not bill excessive amounts of time, given this case's complexity.

## II. *Costs*

Defendants also object to Plaintiffs' request for $10,877.86 in costs. In this regard, Defendants raise several arguments.

■ First, Defendants contend that Plaintiffs failed to comply strictly with Local Rule 54.1's procedure for taxing costs. The Court agrees. But Plaintiffs did attach bills and invoices to their motion, and otherwise properly documented their costs. Accordingly, with one exception (described below), the Court chooses to excuse Plaintiff's technical violations of Local Rule 54.1. *See Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, 09 Civ. 2570, 2009 WL 5173787, *3–4, 2009 U.S. Dist. LEXIS 121323, *11–13 (S.D.N.Y. Dec. 29, 2009) (excusing similar violations).

■ Second, Defendants contend that Plaintiffs failed to submit a bill documenting a $208 process server charge. In response, Mr. Locke states that his firm inadvertently misplaced the invoice they received from the process server and have not been able to obtain another one, but that his firm does have a copy of the check they wrote the process server, and that he attached a copy of this check to his original declaration in support of this motion. Locke Reply Decl. ¶ 9; Locke Decl. Ex. B. This check, for $615.50, contains a memo notation indicating that it includes $208 for services rendered in connection with this case. In light of Mr. Locke's declaration and the check's memo notation, the Court excuses Carabba Locke's failure to supply a process server invoice and awards it the requested $208 in process server costs.

■ Third, Defendants contend that Plaintiffs have provided insufficient detail concerning the claimed $1,120.52 in copy charges. The Court agrees. Mr. Locke's original declaration contained no information at all concerning these charges. Nor

is this information is readily apparent from the document's face (unlike with respect to the process server check). Furthermore, Mr. Locke's reply declaration provides only a terse description of what these costs were incurred "in connection with." Locke Reply Decl. at ¶ 10. And Mr. Locke nowhere affirms that all these costs are "allowable by law." Local Rule 54.1(a). The Court, consequently, does not assess these costs to Defendants.

 Fourth, Defendants argue that Plaintiffs fail to explain the handwritten notation on the trial transcript invoice adding $642.80 to the total cost. The Court disagrees. Mr. Locke has adequately set forth that the court reporter errantly billed Carabba Locke too little, causing Carabba Locke to send a supplemental check, and that the court reporter then never sent Carabba Locke an updated invoice. Locke Reply Decl. ¶ 11. In light of Mr. Locke's reply declaration, and the checks he attached as Exhibit P, the Court assesses the additional $642.80 in transcript costs to Defendants.

Consequently, the Court awards Plaintiffs $9,757.34 in costs.

### III. Pre-judgment and Post-judgment Interest

 Finally, Defendants object to Plaintiffs' request for pre-judgment interest. However, "it is ordinarily an abuse of discretion not to include pre-judgment interest" in a lost wages award. See Gierlinger v. Gleason, 160 F.3d 858, 873–74 (2d Cir.1998). Consequently, both Ms. Todaro and Ms. Moscarelli are entitled to pre-judgment interest on the compensatory damages portion of their award.[3] Plaintiffs are also entitled to post-judgment in-

terest on their entire award, which Defendants do not dispute.

### CONCLUSION

Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART. The Court awards $239,049.86 in attorneys' fees and $9,757.34 in costs. The Court further awards Plaintiffs' pre-judgment interest on their compensatory damages, and post-judgment interest on their full award.

The parties are directed to meet and confer considering an appropriate calculation of pre-judgment interest, and report back to the Court within seven (7) days of this Order concerning their respective positions.

SO ORDERED

---

**3.** Plaintiffs do not seek, and the Court does not award, pre-judgment interest on Ms. Mos-

carelli's punitive damages award, or Ms. Todaro's liquidated damages award.