USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-1117 MARY JANE KERR SELGAS, Plaintiff, Appellee, v. AMERICAN AIRLINES, INC., AND WHADZEN CARRASQUILLO, Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin and Campbell, Senior Circuit Judges. _____________________ ____________________ Howard B. Comet with whom Andrew B. Steinberg and Vicente J. ________________ _____________________ __________ Antonetti were on brief for appellants. _________ Judith Berkan with whom Rosalinda Pesquera and Mary Jo Mendez- ______________ __________________ ________________ Vilella were on brief for appellee. _______ ____________________ January 13, 1997 ____________________ COFFIN, Senior Circuit Judge. At issue in this case are the ____________________ equitable remedies awarded to the plaintiff, Mary Jane Kerr Selgas ("Kerr Selgas"), in a sex discrimination suit against her employer, American Airlines ("American"). A jury awarded Kerr Selgas a lump sum award in that suit that included an unspecified amount for front pay. In an earlier appeal, this court affirmed the judgment. See Kerr Selgas v. American Airlines, Inc., 69 ___ ____________ ________________________ F.3d 1205 (1st Cir. 1995) ("Kerr I"). The district court _______ subsequently ordered Kerr Selgas reinstated by American. American maintains in this appeal that front pay and reinstatement are mutually exclusive equitable remedies, and that the court therefore erred in allowing both to Kerr Selgas. It further claims that the district court erred in ordering reinstatement without conducting a hearing, without permitting American to conduct additional discovery, and in considering extra-record evidence submitted by Kerr Selgas. We affirm the court's legal judgment that both front pay and reinstatement are permissible, but we vacate the district court's order and remand for a hearing on whether reinstatement is an appropriate remedy here.  BACKGROUND __________ The facts of the underlying suit are discussed in detail in our opinion in Kerr I; accordingly, we relate here only those ______ facts relevant to the instant appeal. Mary Jane Kerr Selgas was fired by American Airlines in 1992 after 18 years with the company; she brought suit under federal -2- and Puerto Rico law, alleging sex discrimination, harassment, and violation of her local law right to privacy. At the conclusion of a three week trial, a jury awarded her over $1 million in damages; under Puerto Rico law, this was doubled automatically to over $2 million. A remittitur and the rejection of punitive damages by this court in Kerr I resulted in a final damages award ______ of $1.2 million.  While Kerr Selgas had requested reinstatement in her initial complaint, and also in subsequent motions, the district court set this issue aside during the course of the trial and during the pendency of the Kerr I appeal. One month after this court's ______ decision in Kerr I on November 13, 1995, the district court ______ ordered American to reinstate Kerr Selgas. The court did so without holding a full hearing on this issue, and its order was based on the evidence received at trial and on additional materials submitted with motions by Kerr Selgas. American claims that this reinstatement order is improper for two reasons. First, it argues that reinstatement and front pay are alternative remedies and that Kerr Selgas was fully compensated by the jury award including front pay. Second, if reinstatement is permissible, it argues that it should not have been ordered here without first giving American additional discovery and an opportunity to be heard on the issue, particularly if evidence obtained after the trial was to be considered. DISCUSSION __________ Our review of the district court's decision that both front -3- pay and reinstatement could be awarded together as part of the remedies available to a Title VII plaintiff is de novo, as we __ ____ review for legal error. Compagnie de Reassurance d'Ile de France ________________________________________ et al. v. New England Reinsurance Corp., et al., 57 F.3d 56, 71 _______ ______________________________________ (1st Cir. 1995) (review of legal rulings is de novo). However, __ ____ in reviewing a district court's decision to actually award equitable relief, we utilize the abuse of discretion standard. Lussier v. Runyon, 50 F.3d 1103, 1111 (1st Cir. 1995). Our _______ ______ review is deferential, and we will not normally find an abuse of discretion absent strong evidence of a lapse in judgment. Texaco ______ Puerto Rico v. Department of Consumer Affairs, 60 F.3d 867, 875 ___________ _______________________________ (1st Cir. 1995). In Title VII cases, we must be mindful of the statute's dual purposes of eliminating discrimination and making its victims whole. Id.  __ A. Equitable Remedies Under Title VII: Front Pay and Reinstatement. The remedial scheme in Title VII is designed to make a plaintiff who has been the victim of discrimination whole through the use of equitable remedies. Albemarle Paper Co. v. Moody, 422 ___________________ _____ U.S. 405, 418 (1975). These remedies (which include reinstatement, back pay, and front pay) are accordingly intended to compensate a plaintiff for the effects of the discrimination, both past and future, and to bring the plaintiff to the position which s/he would have occupied but for the illegal act(s). See ___ Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir. _____ ______________________ 1985). Under Title VII, the first choice is to reinstate the plaintiff at the original employer; this accomplishes the dual -4- goals of providing full coverage for the plaintiff and of deterring such conduct by employers in the future. See Scarfo v. ___ ______ Cabletron Systems, Inc., 54 F.3d 931, 954 (1st Cir. 1995).  _______________________ Where reinstatement is not immediately available as a remedy, either due to the plaintiff's condition, or due to conditions at the employer that preclude the plaintiff's return (such as hostility of other employees, or the need for an innocent employee to be "bumped" in order to reinstate the plaintiff), front pay is available as an alternative to compensate the plaintiff from the conclusion of trial through the point at which the plaintiff can either return to the employer or obtain comparable employment elsewhere. See id.; see also Powers ___ ___ ___ ____ ______ v. Grinnell Corp., 915 F.2d 34, 42 (1st Cir. 1990); Wildman v. ______________ _______ Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985) (front pay ___________________ may be awarded in ADEA suits where reinstatement is impracticable or impossible; circumstances of each case to be considered); Dillon v. Coles, 746 F.2d 998, 1006 (3rd Cir. 1984). It is this ______ _____ context, where the overarching preference is for reinstatement and front pay is an alternative for finite periods during which reinstatement is unavailable,1 which is the key to understanding the construction of remedial packages. In this context, it can be seen that front pay and reinstatement are not mutually  ____________________ 1 See, e.g., Scarfo v. Cabletron Systems, Inc., 54 F.3d ___ ____ ______ ________________________ 931, 953 (1st Cir. 1995)("Front pay refers to damages for wages from the date of judgment to some specified date in the future."); Thompson v. Sawyer, 678 F.2d 257, 293 (D.C. Cir. ________ ______ 1982)("[F]ront pay should persist, however, only until the wrongs for which plaintiffs are owed backpay have been righted.")  -5- exclusive. Front pay takes a plaintiff to the point of employability. Reinstatement at that point would, in effect, "perfect" the remedy because the plaintiff would be back in the very job she lost unlawfully. Trial courts have discretion to fashion the awards in Title VII cases so as to fully compensate a plaintiff in a manner that suits the specific facts of the case; this discretion includes the selection of the elements which comprise the remedial recovery.2 Albemarle, 422 U.S. at 415-16. Traditionally, the _________ court determines the whole remedial package in one fell swoop. Hybrid awards combining front pay with other equitable elements, while rare, are not novel. The Court of Appeals for the District of Columbia in Thompson v. Sawyer, 678 F.2d 257, 268 (D.C. Cir. ________ ______ 1982), commended a district court's award (although it reformulated certain of the elements) which included back pay and front pay to be paid to female bindery workers at the Government Printing Office through such time as women comprised half of the litigated positions. Reinstatement and front pay were explicitly  ____________________ 2 American claims that by presenting her claim for front pay to the jury in the form of jury instructions, Kerr Selgas "elected" front pay as a remedy, rather than reinstatement. It is clear that in a Title VII case, it is the court which has discretion to fashion relief comprised of the equitable remedies it sees as appropriate, and not the parties which may determine which equitable remedies are available. See James v. Sears, ___ _____ ______ Roebuck & Co., 21 F.3d 989, 997 (10th Cir. 1994) (decision to ______________ award reinstatement or front pay is at court's discretion; plaintiffs who refused reinstatement where not impracticable or impossible may not elect front pay simply because they prefer it as remedy). Additionally, Kerr Selgas' repeated requests for reinstatement in her original complaint and in subsequent motions bely a claim that she elected one form of recovery over the other. -6- cobbled together as part of the relief afforded the plaintiff in Valdez v. Church's Fried Chicken, Inc., 683 F. Supp. 596 (W.D. ______ _____________________________ Tx. 1988), where reinstatement to a managerial position was ordered as soon as a position became available and front pay was ordered to continue until the reinstatement occurred. This court, while it has not previously addressed this particular issue, has indicated a preference for a flexible approach in the construction of remedial awards. See Lussier, 50 F.3d at 1112 ___ _______ (remedial tapestry is made up of multiple strands of relief).3 The district court therefore had the option here of combining an award of front pay with reinstatement. Its only limitation was to avoid duplication. See Scarfo, 54 F.3d at 955 (citing Dopp v. ___ ______ ____ HTP Corp., 947 F.2d 506, 516 (1st Cir. 1991)(duplicative remedies _________ are to be avoided)). Because courts typically consider all remedies at the same time, duplication most commonly would be avoided by denying front pay when an immediate reinstatement is ordered.  Although the district court was not explicit about what it was doing in this instance (allowing American to argue that reinstatement had been excluded as a prospective remedy), it appears to have bifurcated the traditional remedies analysis on the assumption that, since Kerr Selgas was unable to return to work at the time of trial, pay for some future time -- i.e.,  ____________________ 3 We note that the cases American has cited from our circuit merely support the proposition that reinstatement is the preferred first remedy, and that where this is unavailable, front pay may be awarded, rather than precluding a remedial package which contains both elements.  -7- front pay -- was necessary to compensate Kerr Selgas, whether or not reinstatement would be an appropriate additional remedy.4 It therefore reserved the reinstatement issue for later resolution, and sent the compensatory elements (back pay, front pay, and damages) to the jury for determination.5 By including front pay in its lump sum award, the jury fully compensated Kerr Selgas for the discrimination she had suffered from the point of the initial illegal act to the point at which she would once again be employable at her prior level. The court then took up post-trial whether American was required to take her back.  Due to the amorphous nature of the jury award -- it was simply a lump sum with no distinctions made between the amounts allocated to back pay, front pay, or damages, and with no statement as to the time period which the front pay portion was intended to cover -- it cannot be stated with any certainty which dates or figures the jurors determined were applicable to the front pay issue.6 In other words, it is not clear when they  ____________________ 4 In its June 23, 1994 Order, the district court explicitly stated that the issue of reinstatement remained pending resolution by the court.  5 We would counsel district courts in the future to be explicit about the procedures they are following, whether they choose to reserve an equitable remedy for future determination, or conclude that it is inapplicable in a particular instance.  6 Additionally, an award of front pay, constituting as it does, an estimate of what a plaintiff might have earned had s/he been reinstated at the conclusion of trial, is necessarily speculative. See Loeb v. Textron, Inc., 600 F.2d 1003, 1023 (1st ___ ____ _____________ Cir. 1979). However, this speculative aspect should not deter courts from fashioning awards that accomplish Title VII's goals of making a wronged plaintiff whole. See Barbour v. Mitchell, 48 ___ _______ ________ F.3d 1270, 1280 (D.C. Cir. 1995) (noting courts and juries -8- thought she would be ready to return to work. Testimony at trial, however, put the longest date at 18 months after trial, or October 1995.7 Furthermore, in its charge to the jury, the court specifically limited any damages to those caused by the defendants' wrongful conduct.8 Reinstatement was ordered in December 1995. The front pay and reinstatement awards thus seem most reasonably to cover separate and distinct periods of time.9 Because there is no duplication, the two equitable remedies of front pay and reinstatement could be used in concert to achieve  ____________________ routinely engage in some speculation based on factual record in other situations such as personal injury cases when valuing lost earning capacity).  7 American's expert testified that Kerr Selgas was fit to return to work immediately after the conclusion of trial; Kerr Selgas' expert, on the other hand, testified that it would be eight to 18 months before she would be able to return to work. The testimony concerning her income loss included estimates presented by her expert as to the losses she would sustain were she to return to work immediately, six months after trial, and one year after trial.  8 In its instructions to the jury, the court stated that the jury could award damages only for injuries that the plaintiff proved were caused by the defendants' alleged wrongful conduct. The court then instructed the jury to consider as elements of any damages award back pay, compensatory damages for any future pecuniary losses, and damages for emotional pain, suffering, inconvenience and mental anguish. It specifically required the jury to consider two factors relating to damages for loss of future earnings: reduction of the award by any amount that the plaintiff would have expended in making those earnings; and secondly, reduction of the award by considering the interest that the plaintiff could earn on the amount of the award if she made a relatively risk-free investment.  9 Taken at its outside possible limit, the award for front pay would seem to have extended from the date of judgment (4/13/94) through October 1995. Reinstatement was ordered by the district court on December 13, 1995. Accordingly, there is no overlap between the time period covered by the front pay award and that covered by the reinstatement order. -9- Title VII's goal of fully compensating the plaintiff. This brings us to American's second point on appeal: whether the process used to reach the reinstatement decision was proper.  B. Admission of Evidence and Lack of Hearing on Restitution. American contends that the trial court erred in ordering reinstatement because it impermissibly considered evidence not adduced at trial, and because American was not permitted additional discovery or a hearing on the reinstatement issue.  In considering the plaintiff's post-trial motion for reinstatement, the court had before it both the evidence received at trial, and additional evidence submitted by the plaintiff purporting to demonstrate that some of the issues which might have earlier precluded reinstatement (including hostility of other employees and the plaintiff's own inability to work) were no longer bars to her return.10 The district court explicitly relied upon some of this evidence in its order, citing the information in a newspaper article relating to the departure of certain individuals from American, and her treating psychologist's statement that Kerr Selgas was fit to return to work. However, the court also noted that defendants had  ____________________ 10 Specifically, the plaintiff produced news reports that one of the chief offenders in her experience at American, Whadzen Carrasquillo, had left the company. She also produced a statement by her treating psychologist, Carlos Velasquez, stating he believed she was fit to return to work at American. Velasquez' affidavit, however, speaks only in the most general terms: it states that on the basis of unspecified tests conducted at unspecified dates, Kerr Selgas "is currently[...]functioning adequately" and that he therefore believes she is "now able to return and to carry out her duties as Account Sales Executive at American Airlines."  -10- presented testimony at trial that Kerr Selgas was fit to return ________ to work in March 1994.11  The adversarial system's search for truth and the assessment of remedies are predicated upon an open and fair exchange of ideas and information. Lussier, 50 F.3d at 1113. It is a _______ fundamental principle of this system that a fact finder may not consider extra-record evidence concerning disputed adjudicative facts. Id. at 1114. While we have suggested in at least one ___ case that parties might possibly waive a deprivation of the evidentiary and procedural guarantees embodied in the managed adversarial system with regard to extra-record evidence, or consent to a court's consideration of it, see id. at 1115, the ___ ___ evidence supporting such a voluntary and knowing waiver would need to be significant and unequivocal. Such is not the case here. American repeatedly stated its opposition to Kerr Selgas' reinstatement, and more importantly repeatedly requested a hearing and discovery on the reinstatement issue.12 Kerr Selgas herself requested a jury trial on the ____  ____________________ 11 Kerr Selgas suggested at oral argument that the district court could have reached its determination without relying on the new evidence; however, this is belied by the language of the district court's order. 12 American opposed Kerr Selgas' motion for reinstatement in a 12-page opposition filed on December 23, 1994, citing among other reasons, the need for an evidentiary hearing and additional discovery due to the lack of sufficient information in either the evidence submitted at trial or the later submissions with which to determine whether Kerr Selgas was in fact fit to return to work. In its July 27, 1995 Opposition to Plaintiff's Renewed Request for Reinstatement and Related Benefits, American also opposed Kerr Selgas' reinstatement. Again, in its December 8, 1995 Opposition to Plaintiff's Request for Reinstatement and -11- reinstatement issue in her July 10, 1995 motion requesting reinstatement. Therefore, there is no indication of any intention on either party's part to waive a hearing on the reinstatement issue.  Where the district court based its determination at least partially on information not properly before it in the form of evidence admitted at trial, and where the remedy to be accorded the plaintiff is as significant as reinstatement, we are hesitant to applaud anything less than strict adherence to those procedures which accord each party the opportunity to be fairly heard on key issues. Accordingly, while we hold that reinstatement may properly be awarded in a Title VII case together with front pay as long as there is no duplication between the two awards, in this case we believe a hearing should have been held to determine whether reinstatement was appropriate. Therefore, we vacate the district court's reinstatement order and remand for proceedings consistent with this opinion to determine whether Kerr Selgas should be reinstated by American.13   ____________________ Related Benefits, American raised its objection to reinstatement being ordered without an evidentiary hearing and the opportunity for further discovery.  13 We anticipate a limited hearing on the reinstatement issue. See Uno v. City of Holyoke, 72 F.3d 973, 992 (1st Cir. ___ ___ _______________ 1995) (on remand, lower court may conduct hearing without having new trial and permit parties to supplement the existing record with additional facts). As Kerr Selgas has been compensated for the time from the initial act to the point of her employability, further monetary damages are not available to her, and the damages question is no longer open. -12- CONCLUSION __________ Courts may properly combine the equitable remedies of front pay and reinstatement in order to meet Title VII's goal of providing full compensation to the victims of illegal discrimination, as long as there is no economic or chronological duplication between the awards. However, the protections inherent in the adversarial system demand that full and complete hearings be provided on contested issues affecting these equitable remedies.   Vacated and remanded. No costs to either party. ________________________________________________ -13-