Elizabeth CRIADO, Plaintiff,

v.

IBM CORPORATION, Defendant.

Civil No. 95–2076 (JAF).

United States District Court, D. Puerto Rico.

May 7, 1997.

Enrique J. Mendoza–Mendez, San Juan, PR, for Plaintiff.

Alfredo M. Hopgood–Jovet, McConnell Valdes, San Juan, PR, Jeffrey G. Huvelle, Covington & Burling, Washington, DC, for Defendant.

---

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Elizabeth Criado, filed a claim against defendant, IBM Corporation, for illegally terminating her employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. 12112 (1990), and the Puerto Rico Discharge Indemnity Law, 29 L.P.R.A. § 185a–185d (1995). A jury rendered a verdict in favor of plaintiff. As equitable remedies, we granted plaintiff back pay, and front pay for a limited period, but we denied her request for reinstatement. Plaintiff has requested that we reconsider our decision of January 17, 1997, denying her reinstatement. A hearing was held on March 21, 1997, regarding this issue.

Section 12117 of the Americans with Disabilities Act (ADA) incorporates all the enforcement mechanisms and remedial provisions of Title VII, like reinstatement and back pay. 42 U.S.C. § 12117; 42 U.S.C. § 2000e–5(g). We have discretion to fashion any remedy necessary to compensate fully a plaintiff "in a manner that suits the specific facts of the case; this discretion includes the selection of the elements which comprise the remedial recovery." *Selgas v. American Airlines, Inc.*, 104 F.3d 9, 13 (1st Cir.1997).

■ As we already stated in our prior opinion, we decided to deny reinstatement as a remedy because plaintiff's position was eliminated. *Eldred v. Consolidated Freightways Corp. of Delaware*, 907 F.Supp. 26 (D.Mass.1995) (reinstatement not warranted when position no longer available). Criado worked as a marketing representative for Eduquest, an IBM unit that was organized in 1993 to market IBM products to elementary and secondary private and public schools. Eduquest was a separate division from IBM Puerto Rico; the unit reported directly to the national organization. In March 1995, IBM eliminated the Eduquest unit in Puerto Rico. Of the people that comprised Eduquest, only one remains working for the company, Luisa Gándara, who has been working for IBM since the early eighties. Defendant laid-off Gándara, along with the entire Eduquest team in Puerto Rico. Subsequently, IBM hired her as a system engineer,[1] a position requiring a technical background that she possessed. Unlike Gándara, Criado does not have the technical skills required for the position. We also note that Criado had less seniority, having started to work for IBM in 1986.

Once the unit closed, the IBM Puerto Rico office serviced some of the education customers. Evelyn López, a marketing representative with experience in government accounts, who has been an IBM employee since 1977, was in charge of the Puerto Rico Department of Education account. Moreover, IBM changed the way it marketed its personal computers; other companies such as Computerland and Computer Paradise were in charge of selling to education customers.

Presently, defendant does not have a position to offer plaintiff, who specialized in marketing classroom course software. Personnel numbers at IBM have been dwindling in the last couple of years. IBM Puerto Rico hired only one marketing representative in 1996, who has not yet been assigned to any specific industry; this person has a master's degree in advertising. Although plaintiff could possibly be retrained to fulfill the duties of this position, it would be unfair to displace this newly-hired marketing representative. *See Shore v. Federal Exp. Corp.*, 777 F.2d 1155, 1159 (6th Cir.1985) (reinstatement of successful plaintiff not feasible because it would displace the person who had held the position since plaintiff's termination).

Even if defendant had a position to offer plaintiff, we also find that the tension and antagonism between the parties would probably preclude plaintiff from performing her job effectively were she reinstated. *Id.* ("[t]he hostility which unfortunately exists between the parties precludes the possibility of a satisfactory employment relationship"). Prior to the incidents that gave rise to this case, Criado had problems with three managers, including Ms. Kathy Lee, who terminated plaintiff. Plaintiff also complained about not receiving proper support from IBM's stateside and local offices. Although there does not appear to be any animosity between

---

1. This position is now called Information Technology Specialist.

plaintiff and Guillermo Frontera, the government account executive that hired Criado back in 1986, there is no indication whatsoever that plaintiff would be directly working for Mr. Frontera.

In addition to this friction with IBM management, plaintiff also had difficulty dealing with job pressures at IBM. Criado started seeing Dr. Michael Woodbury in 1987 because she feared that she would not be able to comply with all the job requirements and do her job properly. As a marketing or sales representative in any unit today, Criado would be subject to the same or greater pressures she had before her termination, such as meeting sales quotas, completing daily time cards, and reporting car mileage. If anything, these pressures have been compounded, since IBM has downsized and required appropriate increases in productivity among the remaining employees.

■ Lastly, we note plaintiff's disingenuousness in arguing for reinstatement. At the hearing, plaintiff and Dr. Woodbury testified that she is generally fit to return to work; if we ordered reinstatement, plaintiff would need to continue her therapy with Dr. Woodbury, but the doctor does not foresee any major regressions. However, in her motions, plaintiff contends that according to Dr. Woodbury and Dr. Padró, she is disabled and that, if reinstated, she will request long-term disability benefits. *Docket Document No. 52. See also Docket Document No. 76* ("If then after reinstatement E. Criado starts to show signs of health deterioration then she shall be available for company benefits not available to her now, such as medical coverage, long-term disability benefits, etc."). We remind plaintiff that ADA was enacted to protect a person with a disability against discrimination in employment if the person is qualified, that is, a person "who, with or without reasonable accommodation, can perform essential functions of [the] position." 42 U.S.C. § 12111 (1990). Reinstatement should only be ordered where the plaintiff, returning to work, successfully performs all the required duties of her position notwithstanding any disability she might have. Reinstatement is not merely to take advantage opportunistically of company benefits.

In the present case, we conclude that plaintiff has been made whole through awards of front and back pay. *Selgas,* 104 F.3d at 12. We calculated the amount of front pay from the date of judgment until plaintiff is able to return to the workforce, to wit: Within six months. *See Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931 (1st Cir. 1995) (front pay should be calculated from date of judgment); *Selgas,* 104 F.3d at 13 (front pay is awarded until plaintiff can obtain comparable employment). Plaintiff also succeeded in obtaining $300,000 in compensatory and punitive damages. We are confident that defendant's hefty liability of over $500,000, with costs, accomplishes the goal of deterring discriminatory conduct by defendant in the future. *Id.* at 12. Plaintiff's request for reconsideration of our order denying her reinstatement is, therefore, **DENIED.**

This order disposes of *Docket Document Nos. 76 & 80.*

**IT IS SO ORDERED.**