NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0308n.06

Case No. 15-2378

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jun 08, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TALMER BANK AND TRUST, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| NORMAN MALEK, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

**Before: KEITH, COOK, and STRANCH, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Talmer Bank and Trust sought to enjoin Norman Malek in federal court from continuing to prosecute an arbitration action against it. Talmer alleged that the prosecution of the arbitration action violated a release (hereinafter, "Release") executed between the two parties. In addition to seeking injunctive relief, Talmer sought a declaratory judgment stating that the Release was valid, enforceable, and barred the arbitration action. Talmer also asserted a claim for breach of contract. Malek countersued, claiming, among other things, that the Release was induced by fraud. Talmer moved for judgment on the pleadings. It argued that Malek failed to tender the consideration he received under the Release before attacking its enforceability, and his counterclaims were thus barred under Ohio law. The

district court agreed and granted Talmer's motion. For the following reasons, we **AFFIRM** the district court's judgment in favor of Talmer.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### 1. Relevant Factual Allegations

Beginning in April 2010, Malek served as Corporate Vice President, Treasurer of First Place Bank. R. 1 at 2, ¶ 8; R. 8 at 107, ¶ 7. In 2010, First Place Bank experienced financial distress, which led to First Place Bank "entering into a Supervisory Agreement with the Office of Thrift Supervision on or about March 1, 2011." R. 1 at 2–3, ¶ 9; R. 8 at 107, ¶ 8.

#### a. Change in Control Severance Agreement

On or about March 18, 2011, Malek and First Place Bank entered into a Change in Control Severance Agreement ("CICS Agreement"). R. 1 at 3, ¶ 10; R. 8 at 107, ¶ 9; *see also* R.1-2. Among other things, the CICS Agreement provided that Malek would be "entitled to a payment"—specifically, a "lump sum" based on Malek's "[a]verage [a]nnual [c]ompensation" if First Bank underwent a so-called "change in control" and if Malek was terminated without cause, or left with good cause, within a year of the change in control. R. 1 at 3, ¶ 11; R.1-2 at 22, ¶ 3(a); R. 8 at 113, ¶ 10. The CICS Agreement was set to expire on June 30, 2012, R. 8 at 113, ¶ 11; R1-2 at 22, ¶ 1, but an extension was sought in 2011, *see* R. 1 at 3, ¶ 13; R. 8 at 107, ¶ 12. While First Place Bank's board of directors approved the extension, First Place Bank informed Malek that the Officer of the Comptroller of the Currency ("OCC") did not. R. 8 at 115, ¶ 23. Malek executed an "acknowledgment" of the CICS Agreement's termination. *Id.*; *see also* R. 1-3 at 31.

In October 2012, First Place Bank filed a petition for bankruptcy. R. 8 at 113–14, ¶ 13. As part of these proceedings, Talmer purchased substantially all of First Place Bank's assets. *Id.*

Talmer's acquisition of First Place Bank took place on January 1, 2013.  R. 1 at 4, ¶ 15; R. 8 at 107, ¶ 14.  After the acquisition, Malek was "stripped" of "most of his authority and responsibility he previously had as Treasurer."  R. 8 at 114, ¶ 15.  Thus, he alleges, it was "practically impossible for him to do his job as Treasurer competently and completely."  *Id.* at ¶ 18.

### b.  The Release

More than a year later, Malek's employment was terminated in February 2014.  R. 1 at 4, ¶ 17; R. 8 at 107, ¶ 16.  Malek and Talmer then executed the Release.  R. 8 at 117, ¶ 34.  Under that Release, Malek received $33,313.  *Id.*  Among other things, the Release states that Malek:

> unconditionally waive[s], release[s], and discharge[s] . . . [Talmer] . . . from liability for any and all claims or causes of action, both known and unknown, arising prior to [Malek's] signing this [Release] that [he] may have . . . against [Talmer], including, but not limited to, claims arising under or related to [Malek's] employment and/or termination of [his] employment.

R. 1-1 at 16, ¶ 3(A).  The Release also provides that the parties intend to "resolve, fully[,] and finally" matters relating to any "change-of-control, severance, or other such agreements."  *Id.* at 15.

### c.  The Claims

Malek now alleges that Talmer lied about the OCC's response to the extension request.  R. 8 at 116–17, ¶¶ 25; 26; 29.  Malek asserts that the OCC had not rejected the extension of the CICS Agreement, but rather, the OCC informed Talmer that it needed the "proper documentation" to approve the claim and provided instructions on how to proceed.  *Id.* at 116, ¶ 25.  Malek alleges that in order to avoid paying employees on the CICS Agreement, Talmer intentionally misrepresented the OCC's response, thereby committing fraud.  Malek asserts that

he would not have executed the Release in February 2014 if he knew that the OCC had not refused to approve the CICS Agreement's extension. *Id.* at 117, ¶ 30.

On February 6, 2015, Malek sent a Demand for Arbitration to the American Arbitration Association, asserting a claim for breach of the CICS Agreement. R. 1 at 8, ¶ 37; R. 8 at 109, ¶ 36. Talmer filed this complaint in federal court two weeks later on February 20, 2015. R. 1. Malek answered on March 17, 2015, and stated that the arbitration action against Talmer was "no longer pending."[1] *See* R. 3 at 37. Malek also asserted counterclaims for breach of the CICS Agreement, *id.* at 45, ¶¶ 35–37, and violation of an Ohio statute, Ohio Rev. Code § 2307.60(A)(1), called "Person injured by criminal act has civil remedy; exceptions," *see id.* at 45–46, ¶¶ 38–42. As to the violation of this Ohio statute, Malek states that Talmer, by inducing him to execute the Release, committed the crime of "securing writings by deception," Ohio Rev. Code § 2913.43, and that he may recover in a civil action for Talmer's purported crime. *See id.* at 46, ¶¶ 39–40. Malek refers to this violation as "civil theft." Appellant Br. 4.

After replying to Malek's counterclaims, Talmer moved for judgment on the pleadings. Talmer argued that Malek violated Ohio's "tender-back rule"—namely, that Malek failed to tender back the consideration he received under the Release to Talmer before asserting his counterclaims. R. 6 at 88. Malek then amended his answer. In his Amended Answer and Counterclaim ("Amended Answer"), Malek states that he tendered back the consideration on April 14, 2015, after he filed his original Answer to Talmer's complaint, but Talmer had rejected the tender. R. 8 at 108, ¶ 19; *see also* R. 8-1 at 123–24. In his Amended Answer, Malek alleges three claims against Talmer: (1) fraud; (2) "civil theft;" and (3) rescission of the Release. R. 8 at 118–19. All of Malek's counterlcaims relate to the execution of the Release. *See id.* Malek also

---

[1] According to Talmer, Malek voluntarily dismissed the arbitration action before filing the original answer in this case. *See* R. 11 at 165.

alleges that Talmer owes him $99,980, which represents the difference between his average annual compensation of $133,293 and the $33,313 he received in February 2014 under the Release. *Id.* at 117–18, ¶ 35.

### 2. District Court Decision

Talmer renewed its motion for judgment on the pleadings after Malek amended his answer, arguing that the Release "extinguished" Malek's counterclaims and that Malek's tender of consideration was too late. R. 11 at 160. The district court granted the motion and dismissed Malek's counterclaims. R. 21. In granting the motion, the district court reasoned that Malek failed to timely tender his consideration to Talmer in violation of Ohio law, and was thus barred from asserting fraudulent-inducement and rescission claims. Additionally, the district court noted that the tender was "insufficient" because it was "conditioned on Talmer's rescinding the [Release]." *Id.* at 266. The district court further concluded that Malek breached the Release, and "[i]n light of the declaratory judgment in favor of Talmer," ordered Malek to pay nominal damages of $1.00 to Talmer. R. 21 at 267.

## II. APPELLATE JURISDICTION

The district court exercised diversity jurisdiction under 28 U.S.C. § 1332. The district court entered an order granting Talmer's renewed motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), R. 21, and then entered judgment in favor of Talmer, R. 22. Malek timely appealed. *See* R. 23; Fed. R. App. P. 4(a). The district court's order is a "final decision," and thus this court has appellate jurisdiction under 28 U.S.C. § 1291. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014).

### III.   STANDARD OF REVIEW

A de novo standard of review applies to motions for judgment on the pleadings. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). An answer, like Malek's Amended Answer, is a pleading under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(a)(2). "[W]e [also] treat copies of written instruments attached to a pleading as part of the pleading itself." *McLaughlin v. CNX Gas Co., LLC*, No. 14-3102, 2016 WL 278985, at *2 (6th Cir. Jan. 22, 2016) (citing Fed. R. Civ. P. 10(c)); *see also Roth v. Guzman*, 650 F.3d 603, 608 (6th Cir. 2011); *accord* Fed. R. Civ. P. 10(c). In our review, we "need not accept as true legal conclusions or unwarranted factual inferences." *Winget*, 510 F.3d at 581–82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

"We review the district court's interpretation and application of state law *de novo*." *Ziegler*, 249 F.3d at 512. "A federal court sitting in diversity must apply the [substantive] law of the [applicable] highest state court if that court has ruled on the matter in dispute; otherwise, the court may rely on case law from lower state courts." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 240 (6th Cir. 2011) (citing *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003)); *see also Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 605

(6th Cir. 1975) (stating that even though state trial court decision is not binding, "this court may give weight to the decision of a trial court in determining what is the controlling law" of a particular state).

## IV.   ANALYSIS

On appeal, Malek argues that the district court's dismissal of his counterclaims was improper because his tender of the consideration was both timely and unconditional.  For the following reasons, we conclude that dismissal of the counterclaims is appropriate because Malek's tender was untimely.[2]

### 1.  Merits of Malek's Appeal

Under Ohio law, "a releasor"—like Malek here—"may not attack the validity of a release for fraud in the inducement *unless he first tenders back the consideration* he received for making the release."[3]  *Berry v. Javitch, Block & Rathbone, LLP*, 940 N.E.2d 1265, 1270 (Ohio 2010)

---

[2] Because we conclude that the tender was untimely and so dispose of Malek's counterclaims, we need not determine whether the tender was also conditional.  *See, e.g.*, *Stafford v. Jewlers Mut. Ins. Co.*, 554 F. App'x 360, 370 (6th Cir. 2014).

[3] "[A] federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits." *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)).  "Because this action was brought in federal court in Michigan, Michigan's choice of law rules apply." *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002).  According to Michigan's choice-of-law rules

> a contractual choice of law provision will be binding unless either:
>
> > (a) [t]he chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [§ ]188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 739 (6th Cir. 1999) (citing Restatement (Second) of Conflict of Laws § 187(2) (1988)); *see also Midwest Bus. Credit, LLC v. TTOD Liquidation, Inc.*, No. 305569, 2012 WL 12268402, at *3 (Mich. Ct. App. Nov. 27, 2012).  Because neither of the above exceptions applies here, we give effect to the choice-of-law provision in the Release, which calls for application of Ohio law.  R. 1-1 at 18, ¶ 14.

(emphasis added); *see Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990) (emphasis added) ("A release of liability procured through fraud in the inducement is voidable only, and can be contested *only after* a return or tender of consideration."); *Shallenberger v. Motorists Mut. Ins. Co.*, 150 N.E.2d 295, 302 (Ohio 1958); *Picklesimer v. Baltimore & Ohio R.R. Co.*, 84 N.E.2d 214, 217 (Ohio 1949).[4] "Tender, in this context, refers to an offer, not a completed transaction." *Yoskey v. Eric Petroleum Corp.*, No. 13 CO 42, 2014 WL 4291629, at *5 (Ohio Ct. App. Aug. 29, 2014) (collecting cases). The tender must be made before the rescinding party files the lawsuit. *See, e.g.*, *Maust v. Bank One Columbus, N.A.*, 614 N.E.2d 765, 770 (Ohio Ct. App. 1992) ("Since plaintiff failed to tender back the consideration for the release prior to suit in this case, he is precluded from rescinding it."); *see also Weisman v. Blaushild*, No. 8815, 2008 WL 192139, at *8 (Ohio Ct. App. Jan. 24, 2008) ("Since [the appellants] signed the release in exchange for consideration encompassing a . . . [s]ettlement [a]greement, they *only* had *one option*. They first *had to rescind* and *tender back the consideration*—before they could bring their suit.").[5]

In this case, Malek's counterclaims fall within the scope of the Release, and Malek tendered the consideration after he asserted his counterclaims. The Release provides that Malek:

---

[4] We are not persuaded by Malek's reliance on *Manhattan Life Ins. Co. v. Burke*, 70 N.E. 74 (Ohio 1903), for the proposition that he did not have to tender back the consideration. Appellant Br. 20–21. *Manhattan Life* did recognize an exception to the tender-back rule, but that exception does not apply here. *Mahattan Life* recognized that when there is no dispute between the parties as to liability and payment, then tender is not a condition precedent to the rescission of the release. *See Manhattan Life*, 70 N.E. at 78. In this case, however, there is a dispute as to liability and payment—specifically, Malek alleges that Talmer fraudulently induced him to execute various agreements and committed "civil theft."

[5] A tender of consideration is not required, however, where the plaintiff alleges "fraud in the factum." *Haller*, 552 N.E.2d at 210. "A release is obtained by fraud in the factum"—as opposed to fraud in the inducement—"when the actions or representations of the releasee so impair the mind and judgment of the releasor that he fails to understand the nature or consequence of his release, there has been no meeting of the minds." *Id.* But Malek does not allege that he failed to understand the nature or consequence of the Release here. Rather, he alleges fraud in the inducement, asserting that certain misrepresentations "induc[ed] [the] execution" of the Release. *See id.* at 211 (concluding that plaintiffs did not allege that they did not understand the nature or consequence and so their fraud-claim sounded in "fraud in the inducement"); *see also* R. 8 at 118, ¶¶ 37-38.

> [u]nconditionally waive[s], release[s], and discharge[s] . . . [Talmer] . . . from liability for any and all claims or causes of action, both known and unknown, arising prior to [Malek's] signing this [Release] that [he] may have against [Talmer], including, but not limited to, claims arising under or related to [Malek's] employment and/or termination of [his] employment.

R. 1-1 at 16, ¶ 3(A). The parties also intended to "resolve, fully[,] and finally" matters relating to any "change-of-control, severance, or other such agreements." *Id.* at 15. Malek first alleged that the Release was induced by fraud on March 17, 2016, *see* R. 3 at 44, ¶ 28, and he then tendered the consideration on April 14, 2016, *see* R. 8-1 at 123.

Malek relies on Federal Rule of Civil Procedure 15(a), contending that the Amended Answer supersedes the original answer, thus curing his initial failure to tender the consideration. Appellant Br. 6. While Rule 15(a) itself does not require that the amended pleading supersede the original pleading, we have applied this "superseding doctrine" absent any local rule to the contrary and absent other exceptions not applicable here.[6] *See Braden v. United States*, 817 F.3d 926, 930–31 (6th Cir. 2016); *see also Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) ("Generally, amended pleadings supersede original pleadings.") (citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2010)). It is true that Malek's Amended Answer supersedes his original one, and is thus the operative answer in this case. Nevertheless, while we apply federal procedural law to Malek's suit, we must still apply state substantive law to his state-law claims. *See Poplar*, 636 F.3d at 240. Nothing in Rule 15(a) or our case law allows a litigant to circumvent state-law tender-back requirements. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980) (noting that *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny would not permit such a result). Malek's reliance

---

[6] There is no local rule to the contrary here. *See generally* Local Rules for the Eastern District of Michigan.

on the superseding doctrine is unavailing because it does not excuse his failure to comply with a prerequisite to bringing his claim—tendering back the consideration.[7]

It is well-settled that under Ohio law Malek had to "*first* . . . tender back the consideration—*before* [he] could bring [his] suit." *See Weisman*, 2008 WL 192139, at *8 (first emphasis added) (emphasis omitted). He simply failed to do so, and absent an express exception under Ohio law to the contrary, he is stuck with this failure. *Jacobs ex rel. v. Invisible Fence Co. Inc.*, 201 F.3d 440, 1999 WL 1204876, at *4 (6th Cir. Dec. 3, 1999) (unpublished table decision); *see also Maust*, 614 N.E.2d at 770.

Malek cannot turn back time to excuse his failure for at least two reasons. First, federal courts are reluctant to craft exceptions to state rules absent express intent from the state's highest court. *See Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997) ("A federal court in a diversity case is not free to engraft onto . . . state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the [s]tate in which the federal court sits.") (quoting *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975)); *see also Jacobs*, 1999 WL 1204876. In *Jacobs*, the plaintiffs asked us to "carve out an exception to the Ohio rule for those circumstances in which tendering back the consideration paid is either impossible or impracticable." 1999 WL 1204876, at *3. We said that we could not. *Id.* at *4. We noted that absent "exceptional circumstances" or "clear indication that [the Ohio Supreme] [C]ourt would alter its rule if confronted with the facts of this case," we could not carve out an exception to the general rule. *Id.* Nothing about the circumstances of Malek's case distinguishes it from a typical release agreement. *See id.* Therefore, permitting Malek to use Rule 15(a) as an escape hatch under these circumstances

---

[7] Finding no conflict between our superseding doctrine and Ohio's tender-back rule, we are obliged to allow each rule to "control[] [in] its own intended sphere of coverage." *See Walker*, 446 U.S. at 753.

"would, by its generality, swallow the rule entirely." *See id.* Indeed, if we accepted Malek's argument, any litigant could get around Ohio's tender-back rule by filing an amended pleading, rendering the rule a dead letter.

Second, Ohio courts have recognized that with respect to the tender-back rule, timing is critical. *See, e.g.*, *Weis v. Weis*, 19 Ohio Dec. 451 (Com. Pl. 1908) (rejecting a litigant's attempt to tender the consideration after the commencement of the lawsuit through an amendment to its prior pleading). In *Weis*, the plaintiff noted that he tendered the consideration in an amendment to his original complaint, but he had failed to make the tender at the beginning of the lawsuit.[8] *Id.* at 451. The court rejected the plaintiff's attempt to excuse his failure to comply with a prerequisite to filing suit, reasoning that "it is difficult to understand how the tender can be made to have a retroactive effect so as to speak as of the time when the action was commenced." *Id.* at 452. *Weis'* reasoning is consistent with the decisions of other Ohio courts that have required the rescinding party to tender the consideration before filing the lawsuit. *See, e.g., Maust*, 614 N.E.2d at 770; *Weisman*, 2008 WL 192139, at \*8.[9] At bottom, we have no reason to believe that the Ohio Supreme Court will "modif[y]" the tender-back rule if confronted with the circumstances of this case.[10] *Kurczi*, 113 F.3d at 1429; *see also Berry*, 940 N.E.2d at 1270; *Haller*, 552 N.E.2d at 210.

---

[8] In *Weis*, the "amendment" to the complaint was "taken and read in connection with the original [complaint] and as a part thereof." 19 Ohio Dec. at 451.

[9] Malek argues that *Weis* predates the promulgation of both Ohio and Federal Rules of Civil Procedure and thus is distinguishable. Appellant Br. 17. However, the timing of *Weis* is of no consequence because we have already afforded Malek the benefit of having his Amended Answer supersede the original one. As explained above, applying the superseding doctrine still does not cure his failure to timely tender the consideration.

[10] The Ohio Supreme Court may have occasion to decide the question of the effect on an amended pleading on the tender-back rule. As under the Federal Rules of Civil Procedure, "[i]t is well settled [under Ohio law] that an amended pleading supersedes the original pleading." *Yakov Re, LLC v. Rhodes*, No. C-130349, 2014 WL 1999300, at \* 1 (Ohio Ct. App. May 14, 2014) (citing *Morris v. Morris*, 939 N.E.2d 928, 939 (Ohio Ct. App. 2010).

Accordingly, Malek's untimely tender requires dismissal of his counterclaims.[11]

## V.      CONCLUSION

For these reasons, we **AFFIRM** the district court's judgment in favor of Talmer.

---

[11] Malek's appeal solely relates to the entry of judgment as to Malek's counterclaims. Malek does not challenge the district court's resolution of Talmer's claims, i.e., the ruling that Malek breached the Release and the declaratory judgment in favor of Talmer. R. 21 at 267. We thus need not review those claims on appeal. *See, e.g.*, *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 525 n.4 (6th Cir. 2006) (noting that, with respect to defendant's motion for judgment on the pleadings, plaintiff forfeited some of her claims on appeal because she failed to advance arguments related to them in her appellate briefs).