THAPAR, Circuit Judge, concurring in part and dissenting in part.
Congress does not write statutes on a blank slate. Instead, it legislates against the backdrop of existing common law. So, when Congress wants to displace the existing common law, it must do so clearly. See A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts § 52 (2012). Because Congress did not clearly override the common law ratification and tender-back doctrines when it passed Title VII or the Equal Pay Act, I would apply both rules in McClellan's case and remand for further fact-finding.
I.
Jena McClellan claims that she entered into a release agreement with her employer while under economic duress. She now seeks to rescind that agreement so she can sue her employer for discrimination. In a typical case, two common law doctrines would pose an obstacle to her suit. First, she would have to prove that she did not ratify the agreement with her employer. And second, she would have to tender back (i.e., return) the money she received in exchange for signing the agreement.
The majority, however, holds that neither doctrine applies in McClellan's case because she filed suit under Title VII and the Equal Pay Act. According to the majority, the ratification and tender-back doctrines are inconsistent with these remedial statutes' objectives and, as a result, we should set both rules aside for this category of plaintiffs. I respectfully disagree.
Statutes and the common law coexist in our legal system. So when Congress sets out to regulate a particular subject, chances are that some common law rules touching on that subject already exist. Courts are then left to decide how much of the common law, if any, Congress displaces when it passes new legislation. Fortunately, an age-old presumption guides us in this inquiry: Unless Congress clearly and explicitly states otherwise, courts should assume that Congress expected the existing common law to apply in conjunction with the statute. See United States v. Texas , 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) ("Statutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles." (internal quotation marks omitted) ); Fairfax's Devisee v. Hunter's Lessee , 11 U.S. (7 Cranch) 603, 623, 3 L.Ed. 453 (1812) ("The common law, therefore, ought not to be deemed to be repealed, unless the language of a statute be clear and explicit for this purpose.").
Congress did not clearly and explicitly displace the common law ratification or tender-back rule in either Title VII or the Equal Pay Act. The statutes' texts contain no such displacement. And we know Congress knows how to displace the common law. Indeed, in two similar statutes, Congress specifically regulated releases. See Oubre v. Entergy Operations, Inc ., 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (Older Workers Benefit Protection Act); Hogue v. S. Ry. Co. , 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968) (per curiam) (Federal Employers' Liability Act). By regulating releases, Congress "necessarily implie[d] a negative" and because Congress devised its own rules to govern release agreements, we could fairly infer that Congress did not want to retain the common law rules that would have otherwise applied. 1 William Blackstone, Commentaries on the Laws of England *89 (explaining that the common law only "gives place" when the "statute is couched in negative terms, or where its matter is so *312 clearly repugnant that it necessarily implies a negative"); see also Oubre , 522 U.S. at 424-25, 118 S.Ct. 838 (noting the Older Workers Benefit Protection Act "imposes specific requirements for releases"); Hogue , 390 U.S. at 516-17, 88 S.Ct. 1150. In other words, Congress spoke directly to the question addressed by the common law. Texas , 507 U.S. at 534, 113 S.Ct. 1631.
Tellingly, Congress did not include a similar release-agreement provision in Title VII or the Equal Pay Act. See Fleming v. U.S. Postal Serv. AMF O'Hare , 27 F.3d 259, 261 (7th Cir.1994) (stating the "common law rule requiring tender as a prerequisite to rescission may have to give way" only in cases where federal law "regulates releases"). And McClellan has not pointed to any other statutory provision that might negate the ratification and tender-back rules. Accordingly, I see no reason to conclude that Title VII or the Equal Pay Act displaced these doctrines and would apply them in McClellan's case.
II.
Since Title VII and the Equal Pay Act do not abrogate the ratification and tender-back doctrines, several difficult questions emerge about how to apply them in McClellan's case.
Federal or state law . Should courts apply state federal or state common law to determine whether McClellan has ratified the release agreement or tendered back? At first blush, the answer appears to be federal law. Both the Supreme Court and the Sixth Circuit have broadly stated that federal law governs the validity of an agreement to release a federal cause of action. Dice v. Akron, Canton, & Youngstown R.R. , 342 U.S. 359, 361, 72 S.Ct. 312, 96 L.Ed. 398 (1952) ("[The] validity of releases under [FELA] raises a federal question to be determined by federal rather than state law."); Garrett v. Moore-McCormack Co. , 317 U.S. 239, 243-45, 63 S.Ct. 246, 87 L.Ed. 239 (1942) (holding releases under the Jones Act to be governed exclusively by federal law); Street v. J.C. Bradford & Co. , 886 F.2d 1472, 1481 (6th Cir.1989) (applying the "federal common law of release" to determine whether a release "obtained by a fiduciary from a beneficiary" was valid).
But in recent years, the Supreme Court has reminded courts and litigants that "[t]here is no federal general common law" and refused to apply it in contexts similar to this one. O'Melveny & Myers v. FDIC , 512 U.S. 79, 83, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (quoting Erie R. Co. v. Tompkins , 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ) (characterizing litigant's argument that federal common law should apply as "so plainly wrong"). And consistent with Erie 's longstanding principle, a handful of circuits have held that state, not federal, common law applies when determining whether a plaintiff has validly released or settled federal claims. Makins v. District of Columbia , 277 F.3d 544, 547-48 (D.C. Cir.2002) (joining "[t]he Seventh, Eighth, Tenth, and Eleventh Circuits, and perhaps the Third, Fourth, and Ninth," in "look[ing] to state law [to] determin[e] if" a party validly settled federal claims); Morgan v. S. Bend Cmty. Sch. Corp. , 797 F.2d 471, 476 (7th Cir.1986) (doubting "the authority for and scope of any general rule that federal law governs all aspects of the settlements in Title VII litigation").
Despite this tension in the case law, neither party has asked us to reconsider whether federal common law should apply. Instead, each asks us to evaluate the doctrines under federal common law. But even applying federal common law, questions remain.
*313 Ratification. A party can ratify a contract in many ways, including (1) asserting a willingness to go along with the bargain, or (2) delaying filing suit while using the money received under the deal. See Restatement (Second) of Contracts § 380 cmts. a-b (Am. Law Inst. 1981). Initially, it appears that McClellan ratified the agreement through option two: she collected all of the money from her employer and may have spent it before filing suit. But the story is more complicated. McClellan claims that she signed the release agreement under economic duress. And a party who enters an agreement under economic duress cannot subsequently ratify that agreement until the duress has ended. See Oubre , 522 U.S. at 434, 118 S.Ct. 838 (Scalia, J., dissenting) ("[A] party who has contracted under duress cannot ratify until the duress is removed."); 28 Williston on Contracts § 71:9 (4th ed.) ("No acts can constitute a ratification, however, that are or were done although the fear or influence that operated to induce the original transaction is still effective."). So to determine whether McClellan ratified, we must know whether she was still under the alleged economic duress when she cashed the checks. Since the record remains unclear on that point, I would remand for further fact-finding before deciding whether the ratification doctrine bars McClellan's suit.
Tender-Back. Under the tender-back doctrine, a plaintiff cannot file a lawsuit and keep the money she received in exchange for her promise not to sue . See Oubre , 522 U.S. at 440, 118 S.Ct. 838 (Thomas, J., dissenting) (one cannot "simultaneously retain[ ] the benefits of the release and su[e] to vindicate released claims"). Here, McClellan offered to give the money back to her employer three weeks after filing her lawsuit. But the employer argues that by waiting three weeks, McClellan missed her window for effectively tendering back.
The tender-back rule is a centuries-old doctrine that emerged in an era when we still had courts at law and courts in equity.[1] See Badger v. Phinney , 15 Mass. 359, 363-64 (1819) (requiring the avoiding party to restore money before suing to recover goods from a general store); see also Stewart v. Dougherty , 33 Ky. 479, 481 (1835) (stating "a party wish[ing] to rescind the contract ... must tender back the horse he got"); Bristol v. Braidwood , 28 Mich. 191, 195 (1873) (discussing that the plaintiff's right to rescind accrued after "tendering back the mortgage"); Miller v. Bieghler , 123 Ohio St. 227, 174 N.E. 774, 776 (1931) (stating tender back is a general rule of contract); see also 2 James Kent, Commentaries on American Law 194, 197 (1st ed. 1827) (discussing void-ability on account of infancy and ratification); 1 Joseph Story, Commentaries on Equity Jurisprudence §§ 307, 346 (1st ed. 1836). Because courts at law and courts in equity performed different functions, they applied *314 the rule differently. Generally, courts at law required plaintiffs to return the money before initiating lawsuits. See Restatement (Second) of Contracts § 384 cmt. b. And courts in equity applied a more flexible approach, asking only whether the plaintiff tendered back within a reasonable time . Id .
The formal law-equity divide no longer endures. Yet both versions of the rule continue to exist today. Compare Talmer Bank & Trust v. Malek , 651 F. App'x 438, 444 (6th Cir.2016) (Ohio common law), with Atwell v. Tenn. State Emps. Ass'n , No. 3:14-cv-1808, 2015 WL 5697311, at *4 (M.D. Tenn. Sept. 28, 2015) (Tennessee common law). And modern courts struggle to determine which version of the rule applies in each case. Fleming , 27 F.3d at 261. Nevertheless, federal courts have applied some version of the rule to agreements releasing an individual's rights under contemporary federal statutes. See Samms v. Quanex Corp. , 99 F.3d 1139, 1996 WL 599821, *3 (6th Cir.1996) (unpublished table decision) (ERISA); see also Hampton v. Ford Motor Co. , 561 F.3d 709, 717 (7th Cir.2009) (citing Fleming , 27 F.3d at 260-61) (Title VII) ; Brown v. City of S. Burlington , 393 F.3d 337, 346 (2d Cir.2004) (False Claims Act).
To decide which version of the rule to apply, courts should consider the requested remedy. If a plaintiff asks for an equitable remedy, the equitable version of the rule should generally apply. And if a plaintiff asks for damages, the legal version should typically apply. In some cases, that inquiry will be easy. But the question is harder in release cases like McClellan's. When a plaintiff asks a court to rescind a release agreement so that she can sue under a federal statute, the plaintiff asks for two remedies: first, rescission, and second, whatever remedies she ultimately seeks under the statute. What remedy is the proper touchstone for the tender-back rule? Here, McClellan seeks equitable remedies: rescission and reinstatement. See 2 Joseph Story, Commentaries on Equity Jurisprudence §§ 688-95 (listing rescission as an equitable remedy); see also Fleming , 27 F.3d at 261 (listing reinstatement as an equitable remedy). She also seeks damages, historically a legal remedy. But see Chauffeurs, Local No. 391 v. Terry , 494 U.S. 558, 571, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (stating a monetary award may be equitable if "incidental to or intertwined with injunctive relief"). On the one hand, the fact she seeks an equitable remedy-reinstatement-could be sufficient grounds to apply the equitable rule. Or it might be more appropriate to apply a remedy-by-remedy analysis, such that any legal remedies she seeks are subject to the legal version of the rule, while her equitable remedies require only reasonable timing. Or there is a third possibility. Since tender-back relates to rescission of McClellan's release itself, perhaps the equitable nature of rescission should require courts to always apply the equitable version of the rule. I would remand to the district court to analyze the remedies McClellan seeks and determine the applicable rule in the first instance.[2]
*315 Timing of reasonableness. Assuming the equitable rule applies (at least in part), the district court should consider whether the timing of McClellan's tender back was reasonable. See 2 James Kent, Commentaries on American Law 194 ("In the case of voidable contracts [by infants], it will depend upon [the] circumstances ... whether any overt act of assent or dissent on his part be requisite to determine the fact of his future responsibility."); see also Oubre , 522 U.S. at 440-41, 118 S.Ct. 838 (Thomas, J., dissenting) (stating "immediate tender is not always required"); Stewart , 33 Ky. at 481 (requiring tender back of a horse "in a reasonable time"); Bieghler , 174 N.E. at 776 (suggesting that it is sufficient in "nearly all jurisdictions" for a party to "sufficiently excuse himself" of the duty to tender back). In making that determination, the district court on remand might consider pleading rules as a reference. See Fed. R. Civ. P. 15(a)-(b) ; see, e.g., Girard v.St. Louis Car Wheel Co. , 123 Mo. 358, 27 S.W. 648, 650-52 (1894) (analyzing if and when tender back needed to occur when it was raised as an affirmative defense in the pleadings); see also Talmer , 651 F. App'x at 443-44 (discussing the interplay between Ohio's strict tender-back rule and Federal Rule of Civil Procedure 15 ); Romero v. Allstate Ins. Co. , 170 F.Supp.3d 779, 790 n.9 (E.D. Pa. 2016) (assessing tender back considering plaintiff's three amended complaints). The fact that McClellan tendered back before her employer's first responsive pleading would lend in favor of finding the timing of her tender reasonable. On the other hand, had she tendered back later, meanwhile subjecting the employer to expensive discovery, her timing might deserve greater scrutiny. See McQuiddy v. Ware , 87 U.S. (20 Wall.) 14, 19, 22 L.Ed. 311 (1873) ("[H]e who seeks equity must do equity.").
* * *
Accordingly, I agree with the majority that we should remand the case. But rather than moving forward with the merits of McClellan's Title VII and Equal Pay Act claims, I would instruct the district court to reconsider the ratification and tender-back doctrines consistent with this opinion.

The majority opinion calls my consideration of history "superfluous." But one must look at past common-law cases to understand the development of the common law . See, e.g. , Cuomo v. Clearing House Ass'n, LLC , 557 U.S. 519, 525-29, 129 S.Ct. 2710, 174 L.Ed.2d 464 (2009) (discussing history of common law visitation powers while interpreting National Bank Act); id at 540-46, 129 S.Ct. 2710 (Thomas, J., concurring in part and dissenting in part) (writing for the other four Justices with a different interpretation of the common law history); see also Kirtsaeng v. John Wiley & Sons, Inc , 568 U.S. 519, 537-539, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013) (common law history of the first sale doctrine); Samantar v. Yousuf , 560 U.S. 305, 311-13, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010) (common law history of sovereign immunity). No more so is this true than when trying to understand why two distinct tender-back rules developed in the common law and how they may respectively apply today.

The majority opinion posits that the common law approach of asking district courts to do what they do everyday-analyze complaints-is unworkable. This unworkability evidently follows from the majority opinion's belief that Title VII allows judges to provide remedies that the parties themselves do not seek. The opinion's only citation for that wide-reaching proposition is part of a footnote in an out-of-circuit case. Selgas v. Am. Airlines, Inc. , 104 F.3d 9, 13 n.2 (1st Cir.1997). But if one reads the entire footnote, it becomes clear that the Selgas court did not do what the majority opinion says. Instead, the court applied a remedy that the plaintiff herself sought in her complaint . Id. ("Additionally, [the plaintiff's] repeated requests for reinstatement in her original complaint and in subsequent motions bely a claim that she elected one form of recovery over the other."). Selgas then cannot support the majority opinion's proposition that courts can simply free-wheel Title VII remedies. And, moreover, Selgas goes to show that Title VII does not displace the ordinary rules of pleading-the same rules that the common law approach to tender-back embraces.